Merrell v. Smith, 2021 NCBC 15.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

CARL E. MERRELL; LYLE RANSON;
JEANETTE RANSON; CRAIG S.
MILLER; WANDA EDWARDS
MILLER; and ROBERT J. NASTASE,

　　　　　　Plaintiffs,

v.

JAMES M. SMITH; JENNIFER
SMITH; and CAROLINA BEVERAGE
GROUP, LLC f/k/a CAROLINA BEER
& BEVERAGE, LLC,

　　　　　　Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION

19 CVS 21650 [MASTER FILE]
Related Cases:
19 CVS 22027
19 CVS 23665

**ORDER AND OPINION ON
DEFENDANTS METROPOLITAN
LIFE INSURANCE COMPANY AND
MSI FINANCIAL SERVICES, INC.'S
PARTIAL MOTION TO DISMISS**

1.　　**THIS MATTER** is before the Court on the Partial Motion to Dismiss (the "Motion to Dismiss") filed by defendants Metropolitan Life Insurance Company ("MetLife") and MSI Financial Services, Inc. ("MSI") (together, the "MetLife Defendants") in *Strack, et al. v. Smith, et al.*, (19 CVS 22027). (Mot. to Dismiss, ECF No. 62.) The *Strack* action is one of three Mecklenburg County actions currently pending before the Court involving claims against Carolina Beverage Group, LLC, f/k/a Carolina Beer & Beverage, LLC ("CBB"), James Michael Smith ("Michael Smith"), Jennifer Smith (Michael Smith and Jennifer Smith together, the "Smiths"), the MetLife Defendants, and the estate of the late Richard C. Siskey ("Siskey"), as administered by F. Lane Williamson ("Siskey's Estate"). The Court refers to the

three[1] actions—(1) *Merrell, et al. v. Smith, et al.*, (19 CVS 21650); (2) *Strack*; and (3) *Cochrane, et al. v. Smith, et al.*, (19 CVS 23665)—together as the "CBB Cases."[2]

2. Through the Motion to Dismiss and pursuant to North Carolina Rule of Civil Procedure 12(b)(6), the MetLife Defendants seek dismissal of the breach of fiduciary duty and constructive fraud claims brought against them by plaintiffs Jeffrey A. Strack, Penny N. Strack, James C. Wilson, Pamela Boileau, Dallas Pendry, Jr., Mallory Johnson, Rita Dilling, Carolyn Crozier, Thomas J. Crozier, Jr., and Kent Kalina (together, "Plaintiffs") in the *Strack* case.[3] (Mot. to Dismiss 1–2). The operative complaint challenged by the Motion to Dismiss is Plaintiffs' Second Amended Complaint. (Second Am. Compl., ECF No. 33.)

3. For the reasons set forth in this Order and Opinion, the Court **GRANTS** the Motion to Dismiss.

*Hemmings & Stevens, PLLC, by Aaron C. Hemmings, for plaintiffs.*

*Alexander Ricks, PLLC, by Alice C. Richey, Mary K. Mandeville, and Benjamin F. Leighton; and Morgan, Lewis & Bockius, LLP, by T. Peter R. Pound and John A. Vassallo, III, for defendants Metropolitan Life Insurance Company and MSI Financial Services, Inc.*

Robinson, Judge.

[1] A fourth case involving similar allegations, *Short v. Smith, et al.*, has been voluntarily dismissed. (ECF No. 86 [19 CVS 23856].)

[2] Although the Court has not determined whether the CBB Cases shall be consolidated for trial, the parties in each case, with the Court's approval, have agreed on a coordinated approach to discovery and motions practice. (*See* ECF Nos. 25, 34 [19 CVS 21650]; 34, 49 [19 CVS 22027]; 18, 33 [19 CVS 23665].)

[3] Scott Keck and Roy Lynam, who were originally plaintiffs in the *Strack* case, have voluntarily dismissed all their claims against the MetLife Defendants. (ECF Nos. 102, 129.) The MetLife Defendants are not parties to the *Merrell* litigation, and the claims against the MetLife Defendants in the *Cochrane* case have been voluntarily dismissed. (ECF Nos. 24 [19 CVS 21650]; 113 [19 CVS 23665].)

## I.    FACTUAL AND PROCEDURAL BACKGROUND

4.    The Court does not make findings of fact on a Rule 12(b)(6) motion to dismiss.  Instead, the Court recites only the factual allegations, taken from the Second Amended Complaint and its attachments, that are relevant to the Court's determination of the Motion to Dismiss.

### A.    The Parties

5.    Plaintiffs are former members of CBB, a North Carolina limited liability company.  (Second Am. Compl. ¶¶ 4–6, 20.)  Plaintiffs were also investment clients[4] of the MetLife Defendants during the time period relevant to the Second Amended Complaint.  (Second Am. Compl. ¶¶ 2–3.)

6.    MetLife is a New York corporation.  (Second Am. Compl. ¶ 23.)  MetLife sells life insurance policies and other financial products.  (Second Am. Compl. ¶ 23.)  MSI is a Delaware corporation.  (Second Am. Compl. ¶ 24.)  MSI was a wholly owned subsidiary of MetLife during the time period relevant to the Second Amended Complaint.  (Second Am. Compl. ¶ 24.)  MSI is registered with the Securities and Exchange Commission as a broker-dealer under section 15(b)(1) of the Securities Exchange Act of 1934 and is also a registered investment advisor under N.C.G.S. § 78C-2.  (Second Am. Compl. ¶ 24.)  At all times relevant to the Second Amended Complaint, the MetLife Defendants had offices in Charlotte, North Carolina, and they

---

[4] Plaintiffs Carolyn Crozier, Thomas J. Crozier, Jr., and Kent Kalina allege that they were insurance clients of the MetLife Defendants, as well as investment clients.  (Second Am. Compl. ¶¶ 312, 335.)

conducted business in this State under the registered trade name "Wall Street Capitol." (Second Am. Compl. ¶¶ 23–24.)

## B. The Alleged Fraudulent Scheme at the Center of the CBB Cases

7. The CBB Cases all arise from the same alleged fraudulent scheme carried out by Siskey and the Smiths. The Court previously recited in detail the factual allegations surrounding this scheme in its 22 December 2020 Order and Opinion on CBB's motion to dismiss in each of the CBB Cases. *See Merrell v. Smith*, 2020 NCBC LEXIS 150, at *2–14 (N.C. Super. Ct. Dec. 22, 2020). Therefore, the Court here will only summarize the core allegations regarding the scheme, taken from the Second Amended Complaint, to provide context for the Court's analysis.[5]

8. Plaintiffs allege that they each purchased ownership interests in CBB during the early 2000s based on Siskey's advice. (Second Am. Compl. ¶ 4–5.) At the time, Siskey worked as an insurance agent and securities broker for the MetLife Defendants, and he also had a separate preexisting business relationship with Michael Smith, CBB's majority interest holder and Chief Executive Officer.[6] (Second Am. Compl. ¶¶ 70–73.) After Plaintiffs purchased their CBB ownership interests, they received information about matters relating to the company from CBB, Michael

---

[5] As observed by the Court in its 22 December 2020 Order and Opinion, the operative complaints in the CBB cases "each contain nearly verbatim factual allegations about the alleged fraudulent scheme underpinning the CBB Cases." *See Merrell*, 2020 NCBC LEXIS 150, at *2 n.3.

[6] The Second Amended Complaint does not allege any business dealings between the MetLife Defendants and CBB or Michael Smith. (*See generally* Second Am. Compl.)

Smith, Jennifer Smith (Michael's wife and an employee of CBB), or Siskey. (Second Am. Compl. ¶¶ 19, 79.)

9.     According to Plaintiffs, in 2006, Michael Smith selectively notified Siskey, who was not a member of CBB, that a private equity firm had expressed interest in purchasing CBB and that CBB was also close to finalizing a lucrative bottling franchise deal with Austria-based company Red Bull. (Second Am. Compl. ¶¶ 80–81, 88.) After learning this inside information, Siskey allegedly devised a fraudulent scheme to purchase Plaintiffs' respective membership interests in CBB, at less than the true value of the interests, prior to CBB's sale. (Second Am. Compl. ¶ 82.) Plaintiffs claim that the Smiths helped Siskey defraud Plaintiffs by concealing the inside information about CBB from Plaintiffs, and in return for their help, Siskey gave the Smiths many lavish gifts. (Second Am. Compl. ¶¶ 83–88, 91.)

10.     Siskey allegedly acquired Plaintiffs' shares of CBB stock by employing two tactics. One tactic was to advise some Plaintiffs that the time was right to redeem their CBB stock for a profit. (Second Am. Compl. ¶¶ 149–51, 168–71, 260–63, 282–84, 301–03, 323–25, 342–45.) After these Plaintiffs agreed to redeem their stock, Siskey bought the stock for himself. (*See, e.g.*, Second Am. Compl. ¶ 345.) Siskey's other tactic was to offer to purchase the CBB stock directly from a Plaintiff at a price higher than the price the Plaintiff had paid for the stock. (Second Am. Compl. ¶¶ 238–42.)

11.     The Smiths processed the transactions that transferred Plaintiffs' CBB stock to Siskey, and Michael Smith approved those transactions as the holder of a

majority interest in CBB. (Second Am. Compl. ¶¶ 103, 105.) Plaintiffs allege that Siskey and the Smiths never disclosed to Plaintiffs the same CBB inside information Michael Smith had previously given to Siskey. (Second Am. Compl. ¶¶ 389–90.) Plaintiffs assert that they would not have sold their CBB stock had they known about this information. (Second Am. Compl. ¶ 389.)

12. From late 2007 through early 2008, Siskey purchased 15.25 shares of CBB stock from his clients, including Plaintiffs, for a total sum of $3,872,500. (Second Am. Compl. ¶¶ 102, 489, Ex. 22.) When CBB was eventually sold to a private equity firm, SunTx Partners, Siskey allegedly received over $20,000,000 in distributions based on the 15.25 shares of CBB stock he had fraudulently purchased from his clients, including Plaintiffs, while Plaintiffs received nothing from the sale. (Second Am. Compl. ¶¶ 130–32.) At about that same time, CBB also finalized a profitable distribution contract with Red Bull. (Second Am. Compl. ¶¶ 88, 135.) SunTx Partners ultimately sold its majority interest in CBB to Byrnwood Partners in early 2018, leading to more distributions for CBB's members, including Siskey's Estate, but not Plaintiffs, as a result of that transaction. (Second Am. Compl. ¶¶ 137–38.)

## C. **Allegations Against the MetLife Defendants**

13. Plaintiffs seek to hold the MetLife Defendants directly liable for the alleged fraudulent scheme perpetrated by Siskey and the Smiths.[7] (*See generally* Second Am. Compl.)

---

[7] Plaintiffs also seek to hold the MetLife Defendants vicariously liable for Siskey's alleged misconduct based on the respondeat superior doctrine. (*See* Second Am. Compl. ¶ 530.)

14.     Plaintiffs allege that the MetLife Defendants allowed Siskey to continue providing financial advice, through the Wall Street Capitol Charlotte office, to MetLife clients, including Plaintiffs, even after the MetLife Defendants became aware in 2004 that Siskey had been disciplined by the National Association of Securities Dealers ("NASD") for his involvement in fraudulent securities transactions.[8] (Second Am. Compl. ¶¶ 49–59.)  According to Plaintiffs, although "it was foreseeable that . . . Siskey would continue these illegal transactions and harm . . . other MetLife customers going forward," the MetLife Defendants took no action to stop Siskey from engaging in future misconduct, such as informing their clients of Siskey's disciplinary history.  (Second Am. Compl. ¶¶ 51, 59.)

15.     In addition, Plaintiffs allege that the MetLife Defendants were closely monitoring "Siskey's client files, marketing material, incoming and outgoing correspondence," as well as his "movement of funds," in the wake of Siskey's NASD-issued discipline.  (Second Am. Compl. ¶¶ 52, 366.)  As a result of this enhanced supervision of Siskey, Plaintiffs assert that the MetLife Defendants were "aware" that "Siskey was engaged in insider trading with regard to his purchase of [Plaintiffs'] ownership shares in [CBB]," since distribution checks pertaining to these transactions were mailed to Siskey at the Wall Street Capitol Charlotte office.  (Second Am. Compl. ¶¶ 367–68.)  Plaintiffs also claim that the MetLife Defendants did not inform their clients, including Plaintiffs, of Siskey's participation in this alleged insider trading scheme.  (Second Am. Compl. ¶ 371.)

---

[8] These particular fraudulent securities transactions by Siskey were not related to his alleged participation in the fraudulent scheme at the center of the CBB Cases.

16.     Finally, Plaintiffs assert that they "reasonably relied upon MetLife's globally recognized name and reputation as a safe, secure investment company and placed their trust and confidence in MetLife to look out for their best interests regarding the transactions conducted with . . . Siskey and MetLife's Wall Street Capitol [Charlotte] office."  (Second Am. Compl. ¶ 369.)

17.     Based on the above allegations, as well as the allegation that some plaintiffs were "inexperienced" and "unsophisticated" investors,[9] Plaintiffs allege that the MetLife Defendants "held all the cards" and thus owed a fiduciary duty to Plaintiffs. (Second Am. Compl. ¶¶ 99, 145, 163, 234, 276, 315, 338, 370.)

**D.     Procedural History**

18.     Plaintiffs initiated the *Strack* litigation on 14 November 2019. (ECF No. 3.)  On 19 December 2019, the *Strack* action was designated to the North Carolina Business Court by Order of the Chief Justice of the North Carolina Supreme Court, (ECF No. 1), and assigned to the undersigned by Order of the Chief Business Court Judge, (ECF No. 2).

19.     Plaintiffs filed the Second Amended Complaint on 10 March 2020, asserting several claims against CBB, the Smiths, the MetLife Defendants, and Siskey's Estate.[10]  (Second Am. Compl.)  Against the MetLife Defendants, Plaintiffs have brought claims for (1) breach of fiduciary duty, (2) fraud by omission and concealment,

---

[9]  Plaintiffs Rita Dilling and Dallas Pendry do not allege that they were inexperienced and/or unsophisticated investors.  (Second Am. Compl. ¶¶ 252, 293.)

[10]  Plaintiffs have voluntarily dismissed their claims against Home Run Holdings, LLC, an entity that was originally a defendant in the *Strack* case.  (ECF No 56.)

(3) violation of the North Carolina Securities Act, (4) violation of the North Carolina Investment Advisers Act, (5) constructive fraud, (6) negligent supervision in the alternative, and (7) vicarious liability/respondeat superior. (Second Am. Compl. 70, 76, 85–86, 92–93, 102, 105.)

20. The MetLife Defendants filed the Motion to Dismiss on 1 June 2020, along with a supporting brief. (Mot. to Dismiss; Mem. in Supp., ECF No. 63.) As noted, the MetLife Defendants only move for dismissal of the breach of fiduciary duty and constructive fraud claims raised against them.

21. After full briefing, the Court held a hearing on the Motion to Dismiss by video conference on 20 November 2020 (the "November 20 Hearing"), at which all parties were represented by counsel. The Motion to Dismiss is now ripe for resolution.

## II. LEGAL STANDARD

22. When ruling on a Rule 12(b)(6) motion to dismiss, the Court views the complaint's allegations in the light most favorable to the plaintiff. *See Christenbury Eye Ctr., P.A. v. Medflow, Inc.*, 370 N.C. 1, 5 (2017). The Court analyzes "whether, as a matter of law, the allegations of the complaint . . . are sufficient to state a claim upon which relief may be granted under some legal theory[.]" *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670 (1987). As part of this analysis, the Court treats all well-pleaded factual allegations as true. *See Krawiec v. Manly*, 370 N.C. 602, 606 (2018). The Court, however, is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope*

*Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 274 (2005) (citation omitted). Additionally, the Court may consider documents attached to and incorporated into the complaint without converting the Rule 12(b)(6) motion to dismiss into a motion for summary judgment. *See Moch v. A.M. Pappas & Assocs., LLC.*, 251 N.C. App. 198, 206 (2016).

23. Granting a Rule 12(b)(6) motion to dismiss is proper when "(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Corwin v. British Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (citation omitted). The Supreme Court of North Carolina "routinely uses [this] Rule 12(b)(6) standard . . . in assessing the sufficiency of complaints in the context of complex commercial litigation." *Id.* at 615 n.7.

## III. ANALYSIS

24. The MetLife Defendants contend that Plaintiffs' breach of fiduciary duty and constructive fraud claims against them "should be dismissed because Plaintiffs failed to allege facts establishing a fiduciary relationship with [the MetLife Defendants]." (Mot. to Dismiss 2; *see also* Mem. in Supp. 2.)

25. Although breach of fiduciary duty and constructive fraud are legally distinct claims, *see White v. Consol. Planning, Inc.*, 166 N.C. App. 283, 294–95 (2004), both claims here rest on an alleged fiduciary relationship between Plaintiffs and the MetLife Defendants. (*See* Second Am. Compl. ¶¶ 370, 479; *see also* Mem. in Opp'n 1–

6, ECF No. 95.) A fiduciary relationship "exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Lockerman v. S. River Elec. Membership Corp.*, 250 N.C. App. 631, 635 (2016) (quoting *Abbitt v. Gregory*, 201 N.C. 577, 598 (1931)). A fiduciary relationship may arise by operation of law (a *de jure* fiduciary relationship) or based on the facts and circumstances surrounding the underlying relationship between the parties (a *de facto* fiduciary relationship). *Id.* at 635–36.

26. Plaintiffs do not argue that they had a *de jure* fiduciary relationship with the MetLife Defendants, and the facts alleged in the Second Amended Complaint do not reveal such a relationship. As previously explained by this Court, North Carolina law currently does not recognize a *de jure* fiduciary relationship premised on an underlying broker-dealer/investor relationship, the underlying relationship that Plaintiffs allege existed here between them and the MetLife Defendants. *See, e.g., Aldridge v. Metro. Life Ins. Co.*, 2019 NCBC LEXIS 116, at \*68–69 (N.C. Super. Ct. Dec. 31, 2019); *Edwards v. Vanguard Fiduciary Trust Co.*, 2018 NCBC LEXIS 237, at \*17 (N.C. Super. Ct. Dec. 21, 2018); *NNN Durham Office Portfolio 1, LLC v. Grubb & Ellis Co.*, 2016 NCBC LEXIS 95, at \*99 (N.C. Super. Ct. Dec. 5, 2016).

27. Plaintiffs do contend, however, that they allege facts in the Second Amended Complaint that "establish a *de facto* fiduciary duty" owed by the MetLife Defendants to Plaintiffs. (Mem. in Opp'n 2.) The Court disagrees.

28. "The standard for finding a *de facto* fiduciary relationship is a demanding one: 'Only when one party figuratively holds all the cards—all the financial power or technical information, for example—have North Carolina courts found that the special circumstance of a [*de facto*] fiduciary relationship has arisen.'" *Lockerman*, 250 N.C. App. at 636 (quoting *S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC*, 189 N.C. App. 601, 613 (2008)). For a *de facto* fiduciary relationship to exist, there must be "confidence reposed on one side, and *resulting domination and influence on the other*." *Dalton v. Camp*, 353 N.C. 647, 652 (2001) (emphasis in original) (quoting *Abbitt*, 201 N.C. at 598); *see also Stone St. Partners, LLC v. Williamson*, 2018 NCBC LEXIS 77, at *34 (N.C. Super. Ct. July 26, 2018) (stating that facts showing "domination and control" are "necessary for the creation of a *de facto* fiduciary duty").

29. With these principles in mind and having reviewed the allegations contained within the Second Amended Complaint, the Court concludes that Plaintiffs' factual allegations do not permit the conclusion that a *de facto* fiduciary relationship arose between them and the MetLife Defendants.

30. Although Plaintiffs allege in conclusory fashion that the MetLife Defendants "held all the cards and owed . . . Plaintiffs a fiduciary duty of care," (Second Am. Compl. ¶ 370), the facts alleged in the Second Amended Complaint do not support this assertion. To begin with, Plaintiffs, do not plead facts showing that the MetLife Defendants had any, let alone all, the financial power or technical information with respect to the CBB transactions at issue in this litigation (i.e., the transferring of Plaintiffs' CBB ownership interests to Siskey). Indeed, there are no

allegations that Plaintiffs treated the MetLife Defendants as a source of technical information regarding matters pertaining to CBB, a company that was not affiliated with the MetLife Defendants. Instead, Plaintiffs allege that they received information about CBB matters from CBB, Michael Smith, Jennifer Smith, or Siskey.

31. Moreover, Plaintiffs fall short of alleging facts that would permit a conclusion that the MetLife Defendants had the type of domination and influence over Plaintiffs that could give rise to a *de facto* fiduciary relationship. As set forth in the Second Amended Complaint, Siskey advised Plaintiffs on the disputed CBB transactions and the Smiths processed/approved the transactions.

32. The MetLife Defendants, on the other hand, did not exercise any control over Plaintiffs' decision to sell their CBB stock. *See Lockerman,* 250 N.C. App. at 635–40 (affirming a trial court's grant of summary judgment in the defendant's favor as to the plaintiffs' contention that a *de facto* fiduciary relationship existed, where the plaintiffs exercised some control over the disputed transaction and thus could not show that the defendant figuratively held all the cards); *Aldridge,* 2019 NCBC LEXIS 116, at \*69–71 (concluding that the plaintiffs failed to allege facts sufficient to support a *de facto* fiduciary relationship, where, among other things, they failed to plead facts showing that the defendants had any domination over them or that the plaintiffs had to "rely exclusively on their investment advisors' advice and actions").

33. That some of the Plaintiffs were "inexperienced" and "unsophisticated" investors does not change this result. *Cf. White*, 166 N.C. App. at 293–94 (holding that the plaintiffs' allegation that they "lack[ed] . . . expertise in financial affairs"

coupled "*with further facts and circumstances set forth in the complaint*, adequately plead the existence of a fiduciary relationship") (emphasis added).

34.     The same goes for Plaintiffs' allegation that the MetLife Defendants were aware, but failed to inform Plaintiffs, of Siskey's disciplinary history and the alleged insider trading scheme.  Indeed, in *Aldridge*, a case involving an alleged Ponzi scheme perpetrated by Siskey, this Court dismissed a constructive fraud claim against the MetLife Defendants, concluding that the operative complaints did not reveal a *de facto* fiduciary relationship between the plaintiff investors and the MetLife Defendants even though the plaintiffs had alleged that the MetLife Defendants were aware of Siskey's disciplinary history and his involvement in the Ponzi scheme, but failed to share this information with the plaintiffs.  *See Aldridge*, 2019 NCBC LEXIS 116, at\*14–15, \*17–18, \*65–71.

35.     Thus, Plaintiffs fail to state claims against the MetLife Defendants for breach of fiduciary duty and constructive fraud.

36.     One additional point bears mention.  Citing to *Hardin v. KCS Int'l, Inc.*, 199 N.C. App. 687, 696 (2009), Plaintiffs argue in their opposition brief that "if this Court finds no fiduciary relationship" between Plaintiffs and the MetLife Defendants, the Court should nonetheless determine that Plaintiffs have stated a claim for constructive fraud based on a purported "duty" that the MetLife Defendants "owed" Plaintiffs "due to the extraordinary circumstances of knowingly allowing . . . Siskey, a MetLife employee previously found in violation of securities laws, to continue to manage [the] Wall Street Capitol [Charlotte] office and sell securities," (Mem. in

Opp'n 6). The *Hardin* case, however, did not deal with the pleading requirements for a constructive fraud claim, *see Hardin*, 199 N.C. App. at 690 ("[The plaintiff's] evidence fails . . . to establish the *necessary elements of a claim for fraud*, and we therefore affirm the trial court's order.") (emphasis added), and Plaintiffs' theory is not supported by North Carolina law.

## IV. CONCLUSION

37. For the foregoing reasons, the Court hereby **GRANTS** the Motion to Dismiss. Plaintiffs' claims for breach of fiduciary duty and constructive fraud against the MetLife Defendants are **DISMISSED**.[11]

**SO ORDERED**, this the 4th day of March, 2021.

/s/ Michael L. Robinson
Michael L. Robinson
Special Superior Court Judge
  for Complex Business Cases

---

[11] In light of the Court's ruling, the Court need not consider the MetLife Defendants' contention, raised for the first time at the November 20 Hearing, that they cannot be held vicariously liable for Siskey's alleged breach of fiduciary duty and constructive fraud.