IN THE SUPREME COURT OF NORTH CAROLINA

No. 141PA16

Filed 18 August 2017

CHRISTENBURY EYE CENTER, P.A.

v.

MEDFLOW, INC. and DOMINIC JAMES RIGGI

On writ of certiorari pursuant to N.C.G.S. § 7A-32(b) to review an order entered on 23 June 2015 by Judge James L. Gale, Chief Special Superior Court Judge for Complex Business Cases appointed by the Chief Justice under N.C.G.S. § 7A-45.4, in Superior Court, Mecklenburg County, dismissing plaintiff's complaint. Heard in the Supreme Court on 21 March 2017.

> *Shumaker, Loop & Kendrick, LLP, by Frederick M. Thurman, Jr., for plaintiff-appellant.*
>
> *Robinson, Bradshaw & Hinson, P.A., by Douglas M. Jarrell and Fitz E. Barringer, for defendant-appellee Medflow. Inc.*
>
> *Moore & Van Allen PLLC, by Benjamin P. Fryer and Nader S. Raja, for defendant-appellee Dominic James Riggi.*

NEWBY, Justice.

North Carolina law has long recognized the principle that a party must timely bring an action upon discovery of an injury to avoid dismissal of the claim. Statutes of limitations require the pursuit of claims to occur within a certain period after discovery, thereby striking the balance between one's right to assert a claim and another's right to be free from a stale claim. Here plaintiff's action arises from an

unfulfilled business agreement. Plaintiff's complaint reveals, however, that plaintiff had notice of the breach of the agreement and its resulting injuries fourteen years before commencing the current action. Because plaintiff failed to pursue its claims within the statute of limitations period, plaintiff's claims are time barred. Accordingly, we affirm the trial court's order dismissing plaintiff's claims.

Jonathan D. Christenbury, M.D. founded plaintiff Christenbury Eye Center, P.A., a professional association that offers ophthalmology services. In 1998 or 1999, Dr. Christenbury approached defendant Dominic James Riggi, a consultant, about developing a software management package for plaintiff. Upon Riggi's recommendation, plaintiff purchased a generalized software platform, with the idea that Riggi and plaintiff would later customize and enhance the platform for plaintiff's practice needs and for possible sale to other physician practices and customers. Around the same time, Riggi formed defendant Medflow, Inc., a medical record software development company.

In October 1999, plaintiff and defendants entered into an "Agreement Regarding Enhancements" to the original software platform (the Agreement). The Enhancements are improvements to the software platform such as "customized screens, interfaces, forms, [and] procedures." Under the Agreement, plaintiff assigned its rights in the Enhancements to defendants. "As consideration for the assignment of rights . . . [defendants] agree[d] to pay [plaintiff] a royalty of ten percent (10%) of the gross amount of all fees . . . received" from any sales of the

Enhancements made "on or after October 1, 1999" and to "provide [plaintiff] with a written report on a monthly basis . . . includ[ing] a detailed description of the fees received from [defendants'] Customers during the prior month, along with payment to [plaintiff] of all corresponding fees due with respect to such charges for that prior month." The Agreement also required defendants to pay plaintiff "a minimum royalty in the amount of Five Hundred Dollars ($500.00) each year for the first five years after [20 October 1999]" and restricted defendants from selling the Enhancements to customers within North Carolina and South Carolina without first obtaining plaintiff's written consent.

Defendants never performed any of their obligations under the Agreement. Defendants never provided plaintiff with a single monthly report detailing the fees received from defendants' customers nor paid any corresponding fees. Defendants failed to make the first $500 minimum royalty payment, which became due on 20 October 2000, and never paid any royalties thereafter. Defendants also allegedly sold the Enhancements to other practice groups and customers in the restricted areas of North Carolina and South Carolina without plaintiff's express consent as early as 1999.

For the next ten years, defendants allegedly continued to be in breach of the Agreement, never providing plaintiff a written sales report, never making any royalty payments, and never obtaining plaintiff's consent for restricted sales. Plaintiff, however, continued to use the software platform and received periodic software

updates from Medflow affiliated service providers. During this time, plaintiff did not raise any question or concern regarding its rights to receive written reports and royalty payments, nor did it inquire about restricted sales.

Despite having never received the benefit of its bargain, plaintiff waited fourteen years before filing this action on 22 September 2014. Plaintiff's complaint asserts four claims against defendants: breach of contract, fraud, unfair and deceptive trade practices, and unjust enrichment.[1] Plaintiff alleges that "since October 1999, [defendants have] . . . sold the Enhancements, and derivatives thereof, to other ophthalmologic practices, both inside and outside the restricted territory of North Carolina and South Carolina, without paying royalties to [plaintiff]," and that "[a]t no time did [defendants] . . . inform [plaintiff] that [defendants] had sold further developments or modifications to the Enhancements . . . . [or] paid to [plaintiff] or accounted for any royalties due under the Agreement."

Defendants moved to dismiss all claims under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, asserting that North Carolina's statutes of limitations barred plaintiff's action. N.C.G.S. §§ 1-52, 75-16.2 (2015). In response, plaintiff essentially argued that the Agreement should be treated as an installment contract for limitations purposes, with a new limitations period beginning upon the

---

[1] On 27 October 2014, the Chief Justice designated this case as a mandatory complex business case.

failure to make each payment, thus enabling plaintiff to seek recovery on royalty payments due within the three years before the filing of its complaint. *See Martin v. Ray Lackey Enters.*, 100 N.C. App. 349, 357, 396 S.E.2d 327, 332 (1990) ("[W]here obligations are payable in installments, the statute of limitations runs against each installment independently as it becomes due."). Defendants asserted that under North Carolina law the Agreement should not be considered an installment contract.

Following a hearing, the trial court granted defendants' motions to dismiss. *Christenbury Eye Ctr., P.A. v. Medflow, Inc.*, No. 14 CVS 17400, 2015 WL 3823817, at *8 (N.C. Super. Ct. Mecklenburg County (Bus. Ct.) June 19, 2015). The trial court determined that the allegations of plaintiff's complaint "reveal that [defendants] did not perform [their] reporting and payment obligations at least as early as October 20, 2000, when the first minimum royalty payment was due and substantially more than three years prior to when the Verified Complaint was filed." *Christenbury Eye Ctr.*, 2015 WL 3823817, at *4. Regardless of whether the Agreement was an installment contract, the trial court found that plaintiff's complaint revealed that "[d]efendants clearly repudiated the contract by their consistent and repeated failure to perform, placing [p]laintiff on notice that future reports and payments would not be made." *Id.* at *5. As a result, the trial court concluded that North Carolina's statutes of limitations barred all of plaintiff's claims. *Id.* at *5-8; *see Teachey v. Gurley*, 214 N.C. 288, 293, 199 S.E. 83, 87 (1938) (noting that the statute of limitations begins to run

-5-

when a party repudiates "in such manner that [the adverse party] is called upon to assert his rights").[2]

Plaintiff thereafter improperly noticed appeal to the Court of Appeals, which dismissed the case for lack of jurisdiction. *See* N.C.G.S. § 7A-27(a)(2) (2015) (providing a direct right of appeal to the Supreme Court from a final judgment of the Business Court). We allowed plaintiff's petition for writ of certiorari to review the trial court's dismissal order.

We review a dismissal under Rule 12(b)(6) de novo, "view[ing] the allegations as true and . . . in the light most favorable to the non-moving party." *Kirby v. N.C. DOT*, 368 N.C. 847, 852, 786 S.E.2d 919, 923 (2016) (quoting *Mangum v. Raleigh Bd. of Adjust.*, 362 N.C. 640, 644, 669 S.E.2d 279, 283 (2008)). Dismissal is proper when the complaint "fail[s] to state a claim upon which relief can be granted." *Arnesen v. Rivers Edge Golf Club & Plantation, Inc.*, 368 N.C. 440, 448, 781 S.E.2d 1, 7 (2015) (alteration in original) (quoting N.C.G.S. § 1A-1, Rule 12(b)(6) (2013)). "When the complaint on its face reveals that no law supports the claim . . . or discloses facts that necessarily defeat the claim, dismissal is proper." *Id.* at 448, 781 S.E.2d at 8 (citing *Wood v. Guilford County*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002)).

---

[2] Alternatively, the trial court concluded that, "by declining to take action in regard to [d]efendants' failure to submit reports or make royalty payments, [plaintiff] waived any right to future payments to the extent that the Agreement could appropriately be considered an installment contract." *Christenbury Eye Ctr.*, 2015 WL 3823817, at *5.

Plaintiff premises each of its claims on allegations that defendants breached the Agreement by failing to provide written sales reports or pay royalties and by conducting unauthorized sales.[3]  We conclude that plaintiff's own allegations, taken as true, establish that its claims accrued at the earliest on 20 November 1999 and at the latest by 20 October 2000.  Because plaintiff had notice of its injury but did not initiate its current action for almost fourteen years, all of its claims are time barred.

We have long recognized that a party must initiate an action within a certain statutorily prescribed period after discovering its injury to avoid dismissal of a claim. *See Shearin v. Lloyd*, 246 N.C. 363, 370, 98 S.E.2d 508, 514 (1957) ("Statutes of limitations . . . require that litigation be initiated within the prescribed time or not at all."), *superseded by statute*, N.C.G.S. § 1-15(b) (1971), *on other grounds as recognized in Black v. Littlejohn*, 312 N.C. 626, 630-31, 325 S.E.2d 469, 473 (1985). "The purpose of a statute of limitations is to afford security against stale demands,

---

[3] Specifically, the verified complaint alleges various claims that are all based on defendants' nonperformance:

(1) Plaintiff's breach of contract claim relies on defendants' "fail[ure] to pay royalties under the Agreement and perform other obligations required by the Agreement."

(2) Plaintiff's fraudulent concealment claim relies on defendants' "contractual duty under the Agreement to [report] to the Practice any fees received by Medflow related to the Enhancement."

(3) Plaintiff's unfair and deceptive trade practices claim relies on defendants' failure to report and pay royalties under the Agreement.

(4) Plaintiff's unjust enrichment claim relies on defendants' failing to pay royalties and conducting unauthorized sales, alleging that defendants "retained certain royalties due to [plaintiff] and received certain disallowed fees related to impermissible sales in the restricted territories."

not to deprive anyone of his just rights by lapse of time." *Id.* at 371, 98 S.E.2d at 514. This security must be jealously guarded, for "[w]ith the passage of time, memories fade or fail altogether, witnesses die or move away, [and] evidence is lost or destroyed." *Estrada v. Burnham*, 316 N.C. 318, 327, 341 S.E.2d 538, 544 (1986), *superseded by statute*, N.C.G.S. § 1A-1, Rule 11(a) (Cum. Supp. 1988), *on other grounds as stated in Turner v. Duke Univ.*, 325 N.C. 152, 163-64, 381 S.E.2d 706, 712-13 (1989). "[I]t is for these reasons, and others, that statutes of limitations are inflexible and unyielding and operate without regard to the merits of a cause of action." *Id.* at 327, 341 S.E.2d at 544 (citing *Shearin*, 246 N.C. at 370, 98 S.E.2d at 514).

It is well settled that "where the right of a party is once violated the injury immediately ensues and the cause of action arises." *Sloan v. Hart*, 150 N.C. 269, 274, 63 S.E. 1037, 1039 (1909). A cause of action is complete and the statute of limitations begins to run upon the inception of the loss from the contract, generally the date the promise is broken. *See Jewell v. Price*, 264 N.C. 459, 461, 142 S.E.2d 1, 3 (1965) ("Where there is . . . a breach of an agreement . . . the statute of limitations immediately begins to run against the party aggrieved . . . ." (citing, *inter alia*, *Shearin*, 246 N.C. 363, 98 S.E.2d 508)).

Here plaintiff's complaint reveals that it had notice of its injury as early as 20 November 1999, when defendants failed to provide the first monthly report, and certainly by 20 October 2000, when defendants failed to pay the first $500 minimum

royalty payment. *See Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 493, 329 S.E.2d 350, 354 (1985) (concluding that the statutes of limitations at issue in that case began to run "as soon as the injury [became] apparent to the claimant or should reasonably [have] become apparent"). The complaint further alleges that, despite such payments being due, defendants persisted in their breach and *"[a]t no time . . . paid . . . or accounted for any royalties due under the Agreement."* (Emphasis added.) For fourteen years, however, plaintiff did not raise any question or concern regarding its rights to receive written reports and minimum annual royalty payments, nor did it inquire about restricted sales. Any increase in plaintiff's injury therefore represents the "continual ill effects from an original violation," *Williams v. Blue Cross Blue Shield of N.C.*, 357 N.C. 170, 179, 581 S.E.2d 415, 423 (2003) (quoting *Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981)), and "aggravation of the original [breach]," *Pembee Mfg.*, 313 N.C. at 493, 329 S.E.2d at 354 (citing *Matthieu v. Piedmont Nat. Gas Co.*, 269 N.C. 212, 215, 152 S.E.2d 336, 339-40 (1967)). Because plaintiff had notice of its injury yet failed to assert its rights, all of plaintiff's claims are time barred.[4]

---

[4] Plaintiff's claims for breach of contract, fraudulent concealment, and unjust enrichment are subject to a three-year statute of limitations. N.C.G.S. § 1-52(1), (9). Plaintiff's unfair and deceptive trade practices claim is subject to a four-year statute of limitations. *Id.* § 75-16.2. Based upon the purported claims having arisen at the latest by October 2000, the three-year statute of limitations would have run in October 2003, and the four-year statute of limitations would have run in October 2004.

Plaintiff contends, however, that the Agreement should be treated as an installment contract for limitations purposes and that each overdue sales report, unauthorized sale, and delinquent royalty payment is a separate breach of contract claim, thus allowing plaintiff to pursue any claims arising within three years before filing suit. Because the terms of the Agreement demonstrate a mutual dependency between the promised performance by plaintiff and the promised performances by defendants, the consideration supporting the Agreement is unified and incapable of apportionment. As such, the Agreement is not an installment contract.

"In interpreting contracts, we construe them as a whole." *Ussery v. Branch Banking & Tr.*, 368 N.C. 325, 335, 777 S.E.2d 272, 279 (2015) (citing *Singleton v. Haywood Elec. Membership Corp.*, 357 N.C. 623, 629, 588 S.E.2d 871, 875 (2003)). "Each clause and word is considered with reference to each other and is given effect by reasonable construction." *Id.* at 336, 777 S.E.2d at 279 (citing *Sec. Nat'l Bank of Greensboro v. Educators Mut. Life Ins. Co.*, 265 N.C. 86, 93, 143 S.E.2d 270, 275 (1965)). We determine the intent of the parties and the nature of an agreement "by the plain meaning of the written terms." *RL REGI N.C., LLC v. Lighthouse Cove, LLC*, 367 N.C. 425, 428, 762 S.E.2d 188, 190 (2014) (citing *Powers v. Travelers Ins. Co.*, 186 N.C. 336, 338, 119 S.E. 481, 482 (1923)).

"An 'installment contract' is one which requires or authorizes the delivery of goods in separate lots to be separately accepted." N.C.G.S. § 25-2-612(1) (2015). In such cases the statute of limitations runs against each installment as it becomes due,

*see Shoenterprise Corp. v. Willingham*, 258 N.C. 36, 39, 127 S.E.2d 767, 770 (1962), thus permitting actions falling within the limitations period while precluding those that fall outside of it. Though the term "installment contract" technically applies to contracts for the sale of goods, for limitations purposes this principle has been extended to some agreements falling outside the technical definition. *See, e.g.*, *Martin*, 100 N.C. App. at 357, 396 S.E.2d at 332 (lessee's obligation to pay all real estate taxes levied on the leased premises).

Whether an agreement should be treated as an installment contract "depends not on the number of promises [on either or both sides] . . . but on whether there has been a single expression of mutual assent to all the promises as a unit." 15 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 45:3, at 320 (4th ed. 2014) [hereinafter *Williston on Contracts*]. "A contract is entire, and not severable, when by its terms, nature and purpose it contemplates . . . that each and all of its parts, material provisions, and the consideration, are common each to the other and interdependent." *Wooten v. Walters*, 110 N.C. 251, 254, 14 S.E. 734, 735 (1892). Conversely, the hallmark of an installment contract is that its terms contain "two or more distinct items, both in the agreement to perform and in the promise of compensation, capable of 'apportionment' or separate allocation the one to the other, as indicated in the contract itself." *Neal v. Wachovia Bank & Tr.*, 224 N.C. 103, 107, 29 S.E.2d 206, 208 (1944).

Here a fair construction of the terms of the Agreement compels the conclusion that the Agreement is not an installment contract. The Agreement sets out that, in a one-time assignment, plaintiff conveyed its rights in the Enhancements in exchange for defendants' various promises to provide monthly sales reports, refrain from selling the Enhancements in North Carolina and South Carolina absent plaintiff's express consent, and pay royalties. The terms of the Agreement, therefore, demonstrate a mutual dependency between the promises provided by the parties as consideration to support the Agreement, inextricably tying plaintiff's assignment of rights in the Enhancements to defendants' promised performance. Moreover, the Agreement lacks any indication that the parties intended their promises to be divisible, severable, or otherwise capable of apportionment. *See Williston on Contracts* § 45:4, at 321 ("There is a presumption against finding a contract divisible unless divisibility is expressly stated in the contract itself, or the intent of the parties to treat the contract as divisible is otherwise clearly manifested." (footnotes omitted)). Accordingly, the consideration supporting the Agreement is unified and incapable of apportionment. As such, the Agreement is not an installment contract.[5]

---

[5] Moreover, as the trial court correctly concluded, defendants' immediate and repeated failure to perform effected a clear repudiation of the entire Agreement. *See Edwards v. Proctor*, 173 N.C. 41, 44, 91 S.E. 584, 585 (1917) (noting that a party's refusal to perform results in a breach of contract when "the refusal to perform [is] of the whole contract or of a covenant going to the whole consideration"). Because plaintiff was on notice by at least 20 October 2000 that future reports and payments would not be made, the statute of limitations began to run on plaintiff's claims regardless of whether the Agreement was an installment contract. *See Teachey*, 214 N.C. at 293, 199 S.E. at 87 (stating, *inter alia*, that the statute of

Furthermore, unlike an installment contract, in which specified installment payments are due at scheduled times, the terms of the Agreement contain no fixed time or schedule for any payments beyond the first five years. *See, e.g.*, *Vreede v. Koch*, 94 N.C. App. 524, 380 S.E.2d 615 (1989) (interpreting installment contract that required, *inter alia*, payments in *monthly* installments until all principal and interest were paid in full). The payments on which plaintiff seeks recovery are well beyond that five-year period. Instead, the decision to sell the Enhancements and thus trigger the royalty provision rested entirely in defendants' hands. Plaintiff's installment contract argument therefore fails.

While a party is duty bound to honor its contractual obligations, statutes of limitation operate inexorably without reference to the merits of a cause of action, thereby "preventing surprises through the revival of claims that have been allowed to slumber." *Order of R.R. Telegraphers v. Ry. Express Agency, Inc.*, 321 U.S. 342, 348-49, 64 S. Ct. 582, 586, 88 L. Ed. 788, 792 (1944). Plaintiff's complaint reveals that plaintiff had notice of its injury over fourteen years ago, well before commencing its current action. Whatever rights existed, plaintiff's fourteen-year slumber resulted in their becoming stale. Because plaintiff failed to timely pursue its claims within the statute of limitations periods, plaintiff's claims are time barred. Accordingly, we affirm the trial court's decision to dismiss plaintiff's complaint.

---

limitations begins to run from the time the non-breaching party learned of the repudiation).

AFFIRMED.