An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-937

Filed 6 August 2025

Brunswick County, No. 23 CVS 98

BALD HEAD ISLAND LIMITED, LLC and BALD HEAD ISLAND TRANSPORTATION, INC., Plaintiffs,

v.

VILLAGE OF BALD HEAD ISLAND, Defendant.

Appeal by Defendant from order entered 14 March 2024 by Judge Jason C. Disbrow in Brunswick County Superior Court. Heard in the Court of Appeals 8 April 2025.

> *Fox Rothschild LLP, by Kip D. Nelson, M. Gray Styers, Jr., and Bradley M. Risinger, and Murchison, Taylor & Gibson PLLC, by Michael Murchison and Andrew K. McVey, for Plaintiffs-Appellees.*

> *Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Andrew L. Rodenbough, Gary S. Parsons, and James C. Adams, II, for Defendant-Appellant.*

GRIFFIN, Judge.

Defendant appeals from the trial court's order granting Plaintiffs' motion for summary judgment on Plaintiffs' claim for declaratory judgment seeking invalidation of a Right of First Refusal ("ROFR") to purchase infrastructure on Bald Head Island.

Defendant argues the trial court erred by: (1) concluding the ROFR is unenforceable because of the failure of a condition precedent; (2) concluding Defendant could not enforce the ROFR because Plaintiffs provided notice to Defendant of their intent to sell the assets as required by the ROFR; and (3) failing to hold Plaintiffs' claim for declaratory judgment was time-barred. We hold the trial court properly determined the ROFR is void and unenforceable because of the failure of a condition precedent and Plaintiffs' claim was not time-barred. We do not reach the remaining issue involving performance of the ROFR.

## I. Factual and Procedural Background

Plaintiffs Bald Head Island Limited and its subsidiary, Bald Head Island Transportation, are closely held corporations started by the late George Mitchell in the 1980s. The corporations own and operate much of the infrastructure on Bald Head Island. This includes the Ferry Operation and associated Parking Operation, which provide the only means for large-scale public access to the island; the Tram Operation to transport individual patrons around the island as it is mostly a vehicle-free community; and the Barge Operation, which serves to transport goods to and from the island (collectively "the assets"). Defendant Village of Bald Head Island is the municipal corporation on the island.

In August 1999, the parties executed the ROFR to provide Defendant with an opportunity to purchase the assets if Plaintiffs ever decided to sell them. Section 7 of the ROFR states "This agreement shall become effective only upon approval by the

North Carolina Utilities Commission." Both parties concede neither sought Utilities Commission approval of the ROFR, but both dispute who was responsible for obtaining it.

After Mr. Mitchell's passing in 2013, Plaintiffs began contemplating selling the assets as part of administering Mr. Mitchell's estate. In March 2017, the parties met to discuss the transfer of the assets to a newly formed, multi-jurisdictional body, but the deal fell through before the assets were transferred. Defendant recommitted itself to purchasing the assets thereafter. On 13 January 2022, Defendant's mayor sent Plaintiffs a letter asserting its alleged rights under the ROFR. However, on 31 May 2022, Plaintiffs and SharpVue, a private equity firm in Raleigh, announced they had executed an agreement to transfer the assets.

On 6 September 2022, Plaintiff Bald Head Island Limited delivered a copy of the Asset Purchase Agreement between itself and SharpVue to Defendant in an attempt to satisfy the notice requirement of the ROFR. The letter qualified the offer with Plaintiffs' position that the ROFR is void and unenforceable. Later that month, Defendant requested additional information about the acquisition by SharpVue. Specifically, Defendant requested SharpVue's offer and appraisals, reports, and studies on the assets and related properties contemplated by the Asset Purchase Agreement. Plaintiffs refused to provide the additional information because of its proprietary nature but did offer to allow Defendant access to the facilities for due diligence and inspection purposes.

However, while the acquisition was processing, the parties engaged in tangential litigation surrounding the Utilities Commission's jurisdiction over the assets and their transfer. In February 2022, Defendant initiated an action before the Utilities Commission in which Defendant "requested that the [Utilities] Commission investigate and determine the public utility status of [Plaintiff Bald Head Island Limited] and its Barge and Parking Operations." *State ex rel. Util. Comm'n v. Bald Head Island Transp., Inc.*, 296 N.C. App. 199, 204, 908 S.E.2d 851, 855 (2024) ("*Bald Head I*"). Defendant also requested the Utilities Commission order the Parking and Barge Operations are subject to the Utilities Commission's authority and regulations as an essential component of the Ferry System and as a common carrier service, respectively. *Id.* The Utilities Commission entered an order on 30 December 2022 "determining that [Plaintiff Bald Head Island Limited's] Parking and Barge Operations are subject to its regulatory authority and cannot be sold without prior [Utilities Commission] approval." *Id.* at 204–05, 908 S.E.2d at 856. We affirmed the Utilities Commission's order subjecting the Parking Operations to its jurisdiction and authority but reversed the portion of the order including the Barge Operations as well. *Id.* at 224–25, 908 S.E.2d at 867.

Contemporaneously with the proceedings in *Bald Head I*, SharpVue "filed an application with the Utilities Commission seeking approval to purchase the Ferry Operation." *In re Bald Head Island Transp., Inc.*, 296 N.C. App. 554, WL 4821602 at *1 (2024) ("*Bald Head II*"). We dismissed Defendant's contention that the Utilities

Commission "inappropriately approved the sale of the Barge Operation[,]" because of our previous decision in *Bald Head I,* but upheld the Utilities Commission's order approving the sale of the Ferry and Parking Operations by Plaintiffs to SharpVue. *Id.* at **2–3.

On 19 January 2023, Plaintiffs initiated this action by filing a complaint in Brunswick County Superior Court seeking declaratory judgment that the ROFR is not effective and Defendant forfeited its rights under the ROFR. Plaintiffs also sought to quiet title to the assets. On 21 March 2023, Defendant answered Plaintiffs' complaint and asserted counterclaims for declaratory judgment that Plaintiffs failed to fulfill their obligations under the ROFR. Three days later, Defendant filed a notice of lis pendens for various real property holdings related to the assets. Plaintiffs later amended their complaint to add additional claims for slander of title and tortious interference with contract.

Following discovery, Defendant moved for summary judgment as to all claims on 12 February 2024. Plaintiffs filed a cross-motion for partial summary judgment as to their declaratory judgment and quiet title claims as well as to Defendant's counterclaim for declaratory judgment on 26 February 2024. Defendant then supplemented its initial motion for summary judgment to include all pending claims. After a hearing on the motions, the trial court granted Plaintiffs' motion for summary judgment on 14 March 2024, concluding the ROFR is void and unenforceable because of the failure of the condition precedent contained in section 7 and that Plaintiffs

afforded Defendant all of its rights under the ROFR but that Defendant failed to exercise those rights. Plaintiffs then voluntarily dismissed their remaining claims for slander of title and tortious interference with contract.

Defendant timely appeals from the trial court's order.

## II. Analysis

Defendant argues three different grounds for reversing the trial court's order. First, Defendant argues the trial court erred by concluding the ROFR is void and unenforceable because of the failure to satisfy a condition precedent, that being to obtain approval of the ROFR by the Utilities Commission. Next, Defendant contends the trial court erred by concluding Defendant could not enforce the ROFR because Plaintiffs afforded Defendant any rights it was entitled to under the ROFR. Finally, Defendant alleges the trial court should have concluded Plaintiffs' claim for declaratory judgment was time-barred. Because we hold the trial court properly determined the ROFR is void and unenforceable because of the failure to obtain the Utilities Commission's approval and because Plaintiffs' claim was not time-barred, we do not address Defendant's argument about whether Plaintiffs' afforded Defendant an opportunity to exercise its alleged rights under the ROFR.

## A. Standard of Review

We review a grant of summary judgment *de novo*. *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007) (citing *Builders Mut. Ins. Co. v. North Main Constr., Ltd.*, 361 N.C. 85, 88, 637 S.E.2d 528, 530 (2006)). Under *de novo* review, we

freely substitute our judgment for that of the lower court and consider the matter anew. *Cullen v. Logan Dev., Inc.*, 386 N.C. 373, 377, 904 S.E.2d 730, 734 (2024).

Summary judgment is properly granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." N.C. R. Civ. P. 56(c) (2023). An issue is genuine if supported by substantial evidence and material "if the facts alleged would constitute a legal defense, or would affect the result of the action, or if its resolution would prevent the party against whom it is resolved from prevailing in the action." *James H.Q. Davis Tr. v. JHD Props., LLC.*, 387 N.C. 19, 23, 910 S.E.2d 652, 657 (2025) (citations and internal marks omitted). Evidence is substantial if it constitutes more than a scintilla of evidence and "a reasonable mind might accept [it] as adequate to support a conclusion[.]" *DeWitt v. Eveready Battery Co., Inc.*, 355 N.C. 672, 681, 565 S.E.2d 140, 146 (2002) (citation and internal marks omitted). "The summary judgment standard requires the trial court to construe evidence in the light most favorable to the nonmoving party." *Draughon v. Evening Star Holiness Church of Dunn*, 374 N.C. 479, 482, 843 S.E.2d 72, 76 (2020). "All inferences of fact must be drawn against the movant and in favor of the party opposing the motion." *Forbis v. Neal*, 316 N.C. 519, 524, 649 S.E.2d 382, 385 (2007) (citing *Caldwell v. Deese*, 288 N.C. 375, 378, 218 S.E.2d 379, 381 (1975) (cleaned up)).

Similarly, "whether the language of a contract is ambiguous is a question of

law" we review *de novo*. *Morrell v. Hardin Creek, Inc.*, 371 N.C. 672, 680, 821 S.E.2d 360, 366 (2018).

**B. Section 7**

Defendant contends the trial court erred by concluding the ROFR is void and unenforceable because of Defendant's failure to fulfill a condition precedent. Specifically, Defendant alleges obtaining approval of the ROFR by the Utilities Commission was not a condition precedent to the ROFR becoming effective. Rather, Defendant argues it became effective immediately upon execution and recordation. Moreover, Defendant argues Plaintiffs waived their argument to this effect and are estopped from making it because they waited approximately twenty years to make this contention. Additionally, Defendant also argues the Utilities Commission only has the authority to authorize the transfer of the assets and cannot approve the ROFR as a stand-alone contract. In contrast, Plaintiffs argue a plain text reading of the ROFR requires Utilities Commission approval prior to the document becoming effective. We address each of Defendant's arguments about section 7 in turn and hold the trial court did not err by granting summary judgment on this ground.

*1. Condition Precedent*

While "[t]he controlling purpose of the court in construing a contract is to ascertain the intention of the parties as of the time the contract was made," *Weyerhaeuser Co. v. Carolina Power & Light Co.*, 257 N.C. 717, 719, 127 S.E.2d 539, 541 (1962) (citation omitted), "[w]ritten contracts are to be construed and enforced

according to their terms[,]" *Galloway v. Snell*, 384 N.C. 285, 287–88, 885 S.E.2d 834, 836 (2023) (citation modified). "When the terms of a contract are plain and unambiguous, there is no room for construction. The contract is to be interpreted as written and enforced as the parties have made it." *State v. Philip Morris USA Inc.*, 363 N.C. 623, 632, 685 S.E.2d 85, 91 (2009) (citation modified). If "the contractual language is plain and unambiguous, a contract is to be construed as a whole with each clause and word being considered with reference to its other provisions[,]" *Davis v. Dennis Lilly Co.*, 330 N.C. 314, 319, 411 S.E.2d 133, 136 (1991), but we will not construe a term to be a "'condition precedent in the absence of language plainly requiring such construction.'" *Goforth Props.*, 334 N.C. at 375–76, 432 S.E.2d at 859 (quoting *Harris & Harris Const. Co. v. Crain & Denbo, Inc.*, 256 N.C. 110, 118, 123 S.E.2d 590, 596 (1962)). "'An ambiguity exists where, in the opinion of the court, the language of the [contract] is fairly and reasonably susceptible to either of the constructions asserted by the parties.'" *St. Paul Fire & Marine Ins. Co. v. Freeman-White Assocs., Inc.*, 322 N.C. 77, 83, 366 S.E.2d 480, 484 (1988) (quoting *Maddox v. Ins. Co.*, 303 N.C. 648, 650, 280 S.E.2d 907, 908 (1981)).

"A condition precedent is an event which must occur before a contractual right arises, such as the right to immediate performance." *Foreclosure of Goforth Props., Inc. v. Birdsall*, 334 N.C. 369, 375, 432 S.E.2d 855, 859 (1993) (citing *Farmers Bank v. Brown Distrib.*, 307 N.C. 342, 350, 298 S.E.2d 356, 362 (1983)). "Where parties enter a contract containing a condition precedent, they are bound *when* the condition

is satisfied." *Powell v. City of Newton*, 364 N.C. 562, 566, 703 S.E.2d 723, 727 (2010) (emphasis added). Our Supreme Court has held words like 'when,' 'after,' 'as soon as,' 'whether,' and 'if' give "clear indication that a promise is not to be performed except upon the happening of a stated event." *Farmers Bank*, 307 N.C. at 351, 298 S.E.2d at 362 (citing *Jones v. Palace Realty Co.*, 226 N.C. 303, 306, 37 S.E.2d 906, 908 (1946) (cleaned up)).

Defendant directs us to the "ROFR's purpose, intent, scope, terms, and the parties' conduct" as evidence that the parties intended the ROFR become effective immediately upon execution and recordation. However, as the plain language of the ROFR is unambiguous by stating the contract is to become effective only upon Utilities Commission approval, we will not look beyond its plain language. Here, the ROFR provides in pertinent part:

> THAT WHEREAS, [Defendant] was granted certain rights with regard to the Bald Head Island transportation system, herein after defined; and
>
> WHEREAS, substantial questions exist with regard to rights and obligations of the parties hereto with regard to such transportation system; and
>
> WHEREAS, rather than engaging in lengthy and costly litigation regarding those issues, the parties hereto desire to resolve all outstanding questions between them by the execution of this agreement;
>
>  . . .
>
> 1. That [Defendant] be and hereby is granted a Right of First Refusal, pursuant to the terms and conditions of this

agreement, to purchase the Bald Head Island Transportation System or any portion thereof.

. . .

2. The purchase price to be paid by [Defendant] for the Transportation System and the terms of such purchase shall be equal to the price of the assets comprising the Transportation System and the terms of purchase as shall be contained in any *bona fide* offer from a third party dealing at arm's length with [Plaintiffs] or any successor in title to [Plaintiffs].

3. [Plaintiff Transportation] agrees that it shall notify [Defendant] at such time as [Plaintiff Transportation] begins to contemplate the sale of the Transportation System or any portion thereof, other than such sales as shall be exempt from this Right of First Refusal pursuant to paragraph 1 hereof.

4. Upon receipt by [Plaintiffs] of any acceptable offer to purchase the Transportation System or any portion thereof, [Plaintiffs] shall notify [Defendant] of the existence of an offer acceptable to [them] for the sale of such asset or assets. Notice shall be delivered in writing to the Village Manager and shall include notice to [Defendant] of the existence of an offer to purchase the Transportation System or a portion thereof and shall identify the following:

> (1) The asset or assets which are the subject of such offer;
>
> (2) The identity of the individual or entity making such offer;
>
> (3) The proposed purchase price and terms including any conditions on sale; and
>
> (4) The proposed closing date.

Upon receipt of notice from [Plaintiffs] as to the existence

of an offer acceptable to [Plaintiffs], [Defendant] shall have a period of sixty (60) days from the date of receipt of such notice to determine whether to match such offer.  [Defendant] shall inform [Plaintiffs],  in writing, of its decision within sixty (60) days of the receipt of notice.   In the event that [Defendant] shall fail to respond in writing to [Plaintiffs] within sixty (60) days of the receipt of notice, such failure shall constitute a waiver of the Right of First Refusal herein contained by [Defendant].  If [Defendant] elects to exercise its option to match the offer, [Defendant] shall close upon the purchase of such assets within a period of time equal to one hundred eighty (180) days from the date that [Defendant] exercises its Right of First Refusal or the closing date as set forth in the proposed offer, whichever date shall be later.

[Defendant] may exercise its Right of First Refusal subject to approval by the Local Government Commission of any financing required to consummate the purchase of the Transportation System and further subject to any required to consummate the purchase of the Transportation System and further subject to any other governmental approvals that would be necessary for [Defendant] to purchase and operate the Transportation System and to finance the purchase price thereof.

5. With regard to the existence of real estate which shall be the subject of this Right of First Refusal, the parties agree to record the original of this Right of First Refusal or a memorandum thereof, together with a description of such real estate, in the office of the Register of Deeds for Brunswick County.   In the event that [Plaintiff Transportation] desires to sell any real estate subject hereto, [Defendant] shall release such real estate from this Right of First Refusal upon (1) designation by [Plaintiffs] of a suitable substitute therefor and (2) upon determination by [Defendant] that the proposed substitute real estate is substantially equivalent or superior to the released property for the purposes for which the released property has been used in the Transportation System.  The parties shall then execute such documents as shall release

the original property from this Right of First Refusal and subject the substituted property thereto.

 . . .

7. This agreement shall become effective *only upon* approval by the North Carolina Public Utilities Commission.

(Emphasis added). Section 7, as Plaintiffs contend, contains language to the effect that the ROFR only becomes effective if the Utilities Commission approves the agreement. The use of "only upon," like the words if, after, whether, and as soon as, indicate section 7 is a condition precedent, not to the transfer of the assets as required by law, *see* N.C. Gen. Stat. § 62-111 (2023) (requiring Utilities Commission approval prior to the transfer of certain public utilities), but to the ROFR becoming effective and granting Defendant the contractual right it claims. Thus, Plaintiff did not have an obligation to fulfill the terms of the ROFR and offer Defendant the assets until the agreement was approved by the Utilities Commission. *Goforth Props.*, 334 N.C. at 375, 432 S.E.2d at 859.

Moreover, despite Defendant's contentions, we do not read any ambiguity into the contract as a whole. Section 1 provides that Defendant "be and hereby is granted a Right of First Refusal . . . to purchase the Bald Head Island Transportation System or any portion thereof[]" in the present tense. However, this clause contains limiting language referencing the additional terms and conditions of this agreement—one such condition being the Utilities Commission's approval of the agreement. In the

same vein, Defendant contends language contained in the preamble also evidences the parties' intent for the ROFR to become immediately effective as "the parties could not have intended to exchange 'certain rights' for conditional ones." We agree the parties intended to exchange rights through the ROFR, but the language of section 1 reflects they intended to do so only after fulfilment of the ROFR's explicit terms, including the unfulfilled term of obtaining the Utilities Commission's approval of the document.

The recordation of the ROFR does not persuade us either. The plain language prefacing section 5 "[w]ith regard to the existence of real estate" lends itself to the interpretation that recordation provided notice to other parties interested in purchasing the real property or assets contemplated by the agreement. *See Hill v. Pinelawn Memorial Park, Inc.*, 304 N.C. 159, 163, 282 S.E.2d 779, 782 (1981) (stating North Carolina's recording statute partially "serves to provide constructive notice of claims related to real property"). In fact, that is precisely what happened here. SharpVue's title insurer had notice of the filed document and refused to issue insurance until its effect is determined. Defendant concedes recordation was done "to give the public notice of the Village's interest." However, the ROFR, as stated above, conditions vesting of Defendant's interest upon Utilities Commission approval. The effect of each act, recordation to provide notice and approval to vest interest, can coexist without ambiguity if each are done.

Uncontroverted record evidence also supports the trial court concluding the

Utilities Commission approval was a condition precedent to the ROFR's effectiveness. During the failed 2017 transaction, Defendant drafted and delivered to Plaintiffs a "Termination of Right of First Refusal" to be held in escrow until the transaction was finalized. The termination describes the ROFR and states "[Defendant] and [Plaintiffs] entered into that [ROFR] . . . whereby [Plaintiffs] indicated a willingness to grant a right of first refusal to [Defendant] with regard to the Bald Head Island Transportation System [], subject to the *express condition* that prior approval of the North Carolina Public Utilities Commission [] be obtained[.]" (Emphasis added). Defendant's mayor at the time signed and notarized the termination. While the parties never executed the termination because the 2017 transfer fell through, the release nonetheless evidences the parties' intent that Utilities Commission approval was an express condition precedent to Plaintiffs granting Defendant a right of first refusal.

Supporting this assertion, Defendant's current village manager, during his deposition, affirmed his understanding that section 7's approval requirement applied to the entire ROFR—not just the subsequent transfer contemplated by the agreement. If parties' differing interpretations of a contract may serve as evidence of ambiguity, then the parties' agreement as to the interpretation of their contract serves the opposite conclusion. *See St. Paul*, 322 N.C. at 83, 366 S.E.2d at 484 ("The fact that a dispute has arisen as to the parties' interpretation of the contract is some indication that the language of the contract is, at best, ambiguous."). Similarly,

Plaintiffs' counsel at the time the ROFR was drafted, submitted an affidavit stating "[t]he clear intent of [s]ection 7 was that the ROFR would not become effective until Utilities Commission approval of the ROFR was obtained." In contrast, Defendant's attorney at the time the ROFR was drafted stated nothing to the contrary in his affidavit.

Defendant fails to direct us, and the record fails to show, evidence to the contrary. In totality, the plain language of section 7 states Utilities Commission approval is a necessary condition precedent to the ROFR becoming effective and binding. Unless and until the ROFR became effective, Defendant did not have the rights contemplated by the ROFR nor did Plaintiffs have the corresponding obligations.

### 2. *Utilities Commission Jurisdiction*

Nonetheless, Defendant argues the Utilities Commission does not have the authority to approve a stand-alone right of first refusal like that contained in the ROFR, which Defendant contends is evidence of the parties' intent for the ROFR to become effective immediately upon execution and recordation. Specifically, Defendant argues section 7 "simply recognizes the regulatory requirements applicable to any actual *sale* of the Transportation System."

The General Assembly authorizes the Utilities Commission "to supervise and control the public utilities of the State as may be necessary to carry out the laws for providing for their regulation, and all such other powers and duties as may be

necessary or incident to the proper discharge of its duties." N.C. Gen. Stat. § 62-30 (2023). In executing this authority, the Utilities Commission is empowered to conduct hearings, engage in formal investigations, make decisions, and issue orders. N.C. Gen. Stat. § 62-60 (2023). When doing so, the Utilities Commission "shall be deemed to exercise functions judicial in nature and shall have all the powers and jurisdiction of a court of general jurisdiction as to all subjects over which the Commission has . . . jurisdiction by law." *Id.*

In an earlier stage of the parties' litigation over the transfer of the assets, we held the legislature has empowered the Utilities Commission to "declare rights, status, and other legal relations as to subjects over which it had been given jurisdiction by law." *Bald Head I*, 296 N.C. App. 199, 209, 908 S.E.2d 851, 858 (2024) (citations and internal marks omitted). There, Defendant petitioned the Utilities Commission for a determination that the assets Plaintiffs sought to sell were public utilities and that the transfer of the assets to SharpVue would be subject to Utilities Commission's approval. *Id.* at 203–05, 908 S.E.2d at 855–56. We held the language of section 62-73, which provides the mechanism through which a party may invoke the Utilities Commission's jurisdiction, when read in tandem with the Declaratory Judgment Act, provided the Utilities Commission with jurisdiction to order declaratory judgment, determining whether certain aspects of the sale at issue were public utilities subject to the Utilities Commission oversight. *Id.* This holding is persuasive here.

Under the Declaratory Judgment Act, courts, and the Utilities Commission per section 62-60, have broad power to "determine[] any question of construction or *validity* arising under the instrument, statute, ordinance, *contract*, or franchise, and obtain a declaration of rights, status, or other legal relations thereunder." N.C. Gen. Stat. § 1-254 (2023) (emphasis added). Stated differently, a court may determine the validity of a contract and obtain a declaration of the parties' rights under a contract between two parties. *Id*. "'The purpose of the Declaratory Judgment Act is to settle and afford relief from uncertainty concerning rights, status and other legal relations[.]'" *Bald Head I*, 296 N.C. App. at 209, 908 S.E.2d at 859 (quoting *N.C. Consumers Power, Inc. v. Duke Power Co.*, 285 N.C. 434, 447, 206 S.E.2d 178, 186 (1974)). "Although it is not necessary for one party to have an actual right of action against another for an actual controversy to exist which would support declaratory relief, it is necessary that litigation appears to be unavoidable." *Id*. (quoting *N.C. Consumers Power, Inc.*, 285 N.C. at 446, 206 S.E.2d at 189 (internal marks removed)). The ROFR, by its own terms, stated "substantial questions exist with regard to rights and obligations of the parties hereto with regard to such transportation system" and sought to avoid "lengthy and costly litigation regarding those issues[.]"

Simply put, either party filing for declaratory judgment before the Utilities Commission seeking approval of the ROFR would have been proper in light of the Utilities Commission's authorization to regulate the transfer of public utilities. *See* N.C. Gen. Stat. § 62-111(a) (requiring the Utilities Commission's approval to transfer

public utilities). Moreover, doing so would be consistent both with the Utilities Commission's authority to act as a court and assess the validity of a contract under section 1-254 and its authority to approve the transfer of public utilities. The record contains an example of a similar contract the Utilities Commission approved. In 2001, Defendant and the company Bald Head Island Utilities executed a proposed Memorandum of Understanding and a related proposed Use Agreement. The parties filed these documents seeking, and later obtaining, the Utilities Commission's approval. While the Utilities Commission did invoke its authority under section 62-153(a) with respect to the proposed Use Agreement, it simply stated the proposed Memorandum of Understanding "is deemed to be just and reasonable and in the public interest." Regardless, both documents were proposed contracts concerning assets within the Utilities Commissions jurisdiction—not fully executed contracts imminently attempting to transfer assets upon approval. Plaintiff or Defendant could have done the same here.

In essence, this would have fulfilled section 7's requirement and consequently made the ROFR effective. Regardless, we interpret the ROFR to require Defendant seek approval as the benefits of the agreement run to it. To this end, we do not believe Plaintiffs would have intended to create an additional procedural hurdle when they are not the parties receiving the primary benefit contemplated by the agreement. But, the issue of which party was obliged to seek the Utilities Commission's approval is inconsequential now. The parties do not dispute that approval was never obtained.

Because of that fact, we hold the ROFR is void and unenforceable due to the failure of a condition precedent.

### 3. *Waiver*

Defendant also argues Plaintiffs waived their right to contend the ROFR is void and unenforceable because they did not seek the Utilities Commission's approval. Specifically, Defendant contends Plaintiffs should have sought approval because they were the ones subject to the Utilities Commission's jurisdiction.

Waiving of a contractual right has three requirements: "'(1) the existence, at the time of the alleged waiver, of a right, advantage, or benefit; (2) the knowledge, actual or constructive, of the existence thereof; and (3) an intention to relinquish such right, advantage or benefit.'" *Demeritt v. Springsteed*, 204 N.C. App. 325, 328–29, 693 S.E.2d 719, 721 (2010) (quoting *Fetner v. Granite Works*, 251 N.C. 296, 302, 111 S.E.2d 324, 328 (1959)). "The intention to waive may be expressed or implied from acts or conduct that naturally lead the other party to believe that the right has been intentionally given up." *Id.* at 329, 693 S.E.2d at 721 (citation and internal marks omitted).

Here, construing the evidence in the light most favorable to Defendant, there was not a right, advantage, or benefit that accrued to Plaintiffs. The ROFR, by its own terms, was intended to grant Defendant the right of first refusal to purchase the assets after Utilities Commission approval. If Plaintiffs incurred anything under the ROFR, it was the additional obligation to provide Defendant notice and the

opportunity to match an offer for the assets after the agreement was approved.  As such, we do not conclude Plaintiffs waived their argument that the ROFR was void and unenforceable.

## C. Statute of Limitations

Defendant also contends Plaintiffs' action is time-barred under the applicable statute of limitations.  Specifically, Defendant argues section 1-53(1)'s two-year limit applies while Plaintiffs contend section 1-47(2)'s ten-year limit applies.

"'[A] party must initiate an action within a certain statutorily prescribed period after discovering its injury to avoid dismissal of a claim[.]'" *Chisum v. Campagna*, 376 N.C. 680, 716–17, 855 S.E.2d 173, 198 (2021) (quoting *Christenbury Eye Ctr., P.A.*, 370 N.C. 1, 5, 802 S.E.2d 888, 891 (2017)).  "[D]eclaratory judgment actions are subject to the applicable statute of limitations, which is the one that governs the substantive right that is most closely associated with the declaration that is being sought." *Id.* at 719, 855 S.E.2d at 199–200.  The statute of limitations barring a claim "'should not begin running against a plaintiff until the plaintiff has knowledge that a wrong has been inflicted upon him[,]'" *Chisum v. Campagna*, 376 N.C. 680, 701, 855 S.E.2d 173, 188 (2021) (quoting *Black v. Littlejohn*, 312 N.C. 626, 639, 325 S.E.2d 469, 478 (1985)), but, "'as soon as an injury becomes apparent to the claimant or should reasonably become apparent, the cause of action is complete and the limitation period begins to run[,]'" *Id.* (quoting *Pembee Mfg. Corp. v. Cape Fear Constr. Co., Inc.*, 313 N.C. 488, 493, 329 S.E.2d 350, 352 (1985)); *see Christenbury Eye Center, P.A. v.*

*Medflow, Inc.*, 370 N.C. 1, 2, 802 S.E.2d 888, 889 (2017) ("North Carolina law has long recognized the principle that a party must timely bring an action upon discovery of an injury to avoid dismissal of the claim."). Courts may issue declaratory judgment construing a contract "either before or after there has been a breach thereof." N.C. Gen. Stat. § 1-254.

Section 1-53(1) states "[a]n action against a local unit of government upon a contract, obligation, or liability arising out of a contract, express or implied" must be brought within two years. N.C. Gen. Stat. 1-53(1) (2023). However, the statute continues on to limit its applicability where "a different statute of limitation is prescribed by this Article." *Id*. Section 1-47(2), on the other hand, states an action must be brought within ten years if "[u]pon a sealed instrument or an instrument of conveyance of an interest in real property, against the principal thereto." N.C. Gen. Stat. § 1-47(2) (2023).

Here, whether section 1-53(1)'s two-year or section 1-47(s)'s ten-year limitation applies is irrelevant because an injury to either party could not have occurred until SharpVue made an offer to Plaintiffs, thus placing the ROFR's validity in question. While Defendant has consistently maintained the same position on the ROFR's effectiveness since 2017, differing interpretations of a contract do not necessarily represent the requisite notice or injury North Carolina courts require to cause a statute of limitations to begin running. Rather, the injury to Plaintiffs here causing the statute of limitations to begin accruing would be Defendant's assertion of their

alleged rights contained in the ROFR upon SharpVue's offer to Plaintiff in 2022.

In fact, undisputed record evidence shows Defendant's mayor sent a letter to this effect upon learning of Plaintiffs' intention to sell the assets to a private business months before SharpVue and Plaintiffs entered into the Asset Purchase Agreement. Prior to that point, any alleged injury would be speculative as no promise between the parties was broken. *See Christenbury*, 370 N.C. at 6, 802 S.E.2d at 892 ("A cause of action is complete and the statute of limitations begins to run upon the inception of the loss from the contract, generally the date the promise is broken."). As such, the earliest any statute of limitations could begin running was 2022.

Thus, we hold the trial court correctly held Plaintiffs' action for declaratory judgment was not time-barred because the parties' differing interpretations did not constitute the injury, or notice thereof, necessary to trigger the statute of limitations. Accordingly, we affirm the trial court's grant of summary judgment.

### III. Conclusion

For the aforementioned reasons, we hold the trial court did not err by granting Plaintiffs' claim for declaratory judgment that the ROFR is void and unenforceable because of the failure of a condition precedent to its validity and Plaintiffs' claim was not time-barred.

AFFIRMED.

Judges ZACHARY and FLOOD concur.

Report per Rule 30(e).