MRS. JOSEPH A. NEAL v. WACHOVIA BANK & TRUST COMPANY, EXECUTOR OF THE ESTATE OF MRS. IDA HARDY PEGRAM,

and

JOSEPH A. NEAL v. WACHOVIA BANK & TRUST COMPANY, EXECUTOR OF THE ESTATE OF MRS. IDA HARDY PEGRAM.

(Filed 8 March, 1944.)

1. **Executors and Administrators § 15d: Wills §§ 4, 5: Frauds, Statute of, § 9—**

   An oral contract, to devise specific real estate, or to bequeath its value to husband and wife for joint services rendered deceased, is obnoxious to the statute of frauds, and, that issue being raised, the husband and wife may separately sue the estate of deceased upon the *quantum meruit* for the services rendered by them respectively without regard to the contract.

2. **Executors and Administrators § 15d: Evidence §§ 32, 40: Frauds, Statute of, § 14—**

   Recital in a complaint of a parol contract, void under the statute of frauds, does not bind plaintiff in his choice of action, it being common and approved practice, in actions to recover for services rendered on such contracts, to recite the same, not by way of reliance on its terms, but to rebut any presumption that the services were gratuitous, or in support of the contention that they were rendered and accepted in expectation of being paid for. Parol evidence of the contract is competent for such purpose.

**3. Frauds, Statute of, § 9: Wills § 4—**

A contract to devise real estate is within the statute of frauds. A contract to bequeath personalty, standing alone, is not.

**4. Contracts § 9—**

Although it be conceded that under certain conditions alternative promises may be subject to the rule of separability, it does not follow that it may be applied in every case—the facts of the particular case must be strongly controlling.

**5. Limitation of Actions §§ 2e, 3: Wills § 5—**

Where there is a promise by one to reward another for services performed, by devise or bequest, the statute of limitations does not begin to run against the promise until the death of the promisor.

APPEAL by plaintiffs from *Phillips, J.,* at June Term, 1943, of FORSYTH.

The plaintiffs in the above actions, husband and wife, brought separate actions against the executor of Mrs. Pegram's will, each suing upon a *quantum meruit* for services rendered the decedent during a long period of years prior to her death. The complaints are identical except for changes of persons in reference to the different plaintiffs and the nature of the services performed. The suits were consolidated for convenience in hearing, but their separateness is preserved for application of the principles of law and procedure in pleading.

In brief, the complaints set up particulars as to the length and character of the services and their reasonable value. Each complaint further alleges that Mrs. Pegram orally agreed with the plaintiffs, husband and wife, that in return or compensation for the services performed by them she would take care of them in her will; and would will to them her home place on Glenn Avenue, or its value in money at her death; and that, in breach of the agreement, she left a last will and testament in which she failed to provide for either of them in any manner whatsoever. In her action Mrs. Neal alleges her services were reasonably worth $7,080.00, and, having sued within six months from the rejection of her claim by the executor, demands judgment for that amount.

Joseph A. Neal alleges that his services were reasonably worth the sum of $3,776.00, and demands judgment for that amount. Joseph A. Neal was permitted to amend his complaint by alleging that his services were worth $15.00 per week.

In each case the defendant executor answered, denying the material allegations of the complaint; and, further answering, pleaded the three-year statute of limitations in bar of the action.

The cases came on for a hearing at June, 1943, Term of Forsyth Superior Court, at which time, after the pleadings had been read, coun-

sel for the defense demurred, *ore tenus,* in each case for that the complaint failed to state a cause of action, in that it affirmatively appears from each complaint that such cause of action as the plaintiff had, if any, was a joint cause of action and not a separate cause of action. The court, being of that opinion, dismissed both actions, and the plaintiff in each case excepted and appealed.

*Fred S. Hutchins and H. Bryce Parker for plaintiffs, appellants.*
*Womble, Carlyle, Martin & Sandridge for defendant, appellee.*

SEAWELL, J.   Summarizing the situation with which we have to deal, we observe that the plaintiffs in these separate actions have sued upon implied *assumpsit* for services rendered the decedent.   The complaint in each case, however, discloses a parol contract to convey by will specific real estate—the home place on Glenn Avenue—or its value in money, and the death of the promisor, testate, without doing either.   The defendant answered, denying the contract.   Subsequently the defendant demurred to the complaints, *ore tenus,* upon the ground that plaintiffs had no separate cause of action, but must sue, if at all, in a joint action upon the contract disclosed in the complaints—which, it is contended, contemplates joint employment, joint performance, and common or joint compensation.

The position of the defendant is anomalous, since in the previously filed answer it denies the contract and in the demurrer, in effect, admits it, and draws the legal conclusion that plaintiffs can recover only for its breach.   We might work out the rights of the parties on different lines and perhaps reach a different conclusion if it were not for the involvement of the statute of frauds in the controversy, and the necessity of determining its effect on plaintiffs' cause of action, and of clarifying the function of the parol contract, as a part of the declaration, when it is found to be void under the statute.

The demurrer is addressed, as we have seen, to the right of plaintiffs to maintain separate actions on the *quantum meruit* for the services rendered the decedent.   The plaintiffs' right to maintain these actions is predicated on the theory that the contract is void and unenforceable under the statute, leaving to them the right to sue on *quasi*-contract or implied *assumpsit* for the value of the services.   *Grantham v. Grantham,* 205 N. C., 363, 171 S. E., 331; *Price v. Askins,* 212 N. C., 583, 194 S. E., 824; *Ebert v. Disher,* 216 N. C., 36, 3 S. E. (2d), 301; *Daughtry v. Daughtry,* 223 N. C., 528, 27 S. E. (2d), 446. If, indeed, plaintiffs are relegated to action upon the contract, their present separate actions in *assumpsit* must fail, since, at least, the contract provides for common or joint compensation.   But, if the oral contract is obnoxious to the statute

of frauds, and that issue is raised, the plaintiffs may separately sue upon the *quantum meruit* for the services rendered by them respectively, without relying upon the contract. *Grantham v. Grantham, supra.* Recital in the complaint of a parol contract void under the statute of frauds does not, *ipso facto,* bind the plaintiffs in their choice of action. It is common and approved practice in suits to recover for services rendered under such a contract to recite the contract, not by way of reliance upon its terms, or to recover for its breach, but to rebut any presumption which might arise that the services were gratuitous, or in support of the contention that they were rendered and accepted in expectation that they would be paid for. *Grantham v. Grantham, supra; Price v. Askins, supra.* "The contract itself 'falls out of view as a ground of legal remedy and appears only to give color to the conduct of the parties in furnishing and accepting the services rendered. It affords the means of determining that the service was not a gift but a sale.' " 2 Page on Contracts, sec. 1415; *Gay v. Mooney,* 67 N. J. L., 27, 29, 50 A., 596. Parol evidence of the contract is competent for that purpose. The position of the defendant on its demurrer is, therefore, not aided by its previously filed answer denying the contract. Such denial is one way of invoking the statute of frauds and puts the defendant in position to administer the *coup de grace* by excluding the parol evidence offered in its support. Under this state of the pleadings, the plaintiffs will not be forced to the vain expedient of suing upon the contract to test its validity, and of suffering defeat, before bringing action on the *quantum meruit,* if upon such denial, it appears as a matter of law, that the contract is within the statute, and void. *Price v. Askins, supra,* page 587, and cases cited; *Grantham v. Grantham, supra.*

Mrs. Pegram promised the plaintiffs that she would reward them for their services by making a will conveying to them her "home on Glenn Avenue, or its value in money." In what way is the contract affected by the statute of frauds? The answer to that question depends upon whether with respect to the "promise"—which is in the alternative—the contract is regarded as separate or entire. To guard against a hasty conclusion, we may add that the use of the disjunctive does not necessarily mean that the promise is separable in law. It depends upon other factors which we must consider—principally, the relation of the alternative engagements to each other, if any exists.

A contract to devise real estate is within the statute of frauds. *Grantham v. Grantham, supra; Price v. Askins, supra; Norton v. McLelland,* 208 N. C., 137, 179 S. E., 443; *Shore v. Holt,* 185 N. C., 312, 117 S. E., 165. A contract to bequeath personalty, *standing alone,* is not. *Halsey v. Snell,* 214 N. C., 209, 198 S. E., 635; *Burton v. Styers,* 210

N. C., 230, 186 S. E., 248; *Helsabeck v. Doub,* 167 N. C., 205, 83 S. E., 241.

Questions as to separability more often arise when the contract has two or more distinct items, both in the agreement to perform and in the promise of compensation, capable of "apportionment" or separate allocation the one to the other, as indicated in the contract itself. The practical effect of the severance in such a case is to divide the contract into several smaller contracts, rejecting those which appear to be offensive to the statute. The doctrine of separability, it is apparent, must be applied with caution even in this instance, and the hand of the Court is often stayed by its inability to make a contract for the parties and by the serious question whether the parties would have entered into the contract at all with that part held to be within the statute eliminated. These inhibitions follow the doctrine of separability in whatever form presented and must be hurdled in the case at bar before that part of the promise falling within the statute of frauds is pruned from the agreement and its alternative enforced.

Upon the general question of separability where the promise presents alternatives, one within the statute and one without, there is a sharp division of authorities. Some have taken the more mechanical view that as the option to convey, or will, real estate has not been exercised, the alternative as to the personalty survives and is enforceable. (It may be noted here that the option as to the personalty has just as much expired as that relating to the realty.) Others have taken the broad view that the option presented is personal to the promisor and cannot be exercised by the Court without making a contract between the parties, or that it cannot be relied upon by the plaintiff without showing a breach or nonperformance of the promise that lies within the statute, and the alternative promise is therefore unenforceable. See annotations in 13 A. L. R., 271.

In Browne, Statute of Frauds, 5th Ed., p. 187, 188, it is said, referring to alternative promises, one of which is within the statute and the other without:

"It is manifest that no action will lie upon that one which if it stood alone could be enforced as being clear of the statute of frauds because the effect would be to enforce the other, namely by making the violation of it the grounds of an action." Citing *Van Allstine v. Wimple,* 5 Corven (N. Y.), 562; *Patterson v. Cunningham,* 12 Me., 506; *Goodrich v. Nichols,* 2 Root (Conn.), 498; *Rice v. Peet,* 15 Johns (N. Y.), 503; *Howard v. Brower,* 37 Ohio St., 502, leading cases in this field.

In 3 Elliott on Contracts, sec. 2309, it is said: "Where by the terms of a contract, one either agrees to perform an act which is not within the statute of frauds or at his election to perform a different act which

is within the statute, such contract is unenforceable. Thus an oral contract to pay money or convey realty, or such contract to devise land or bequest personalty, is not enforceable." Citing several of the authorities used by Browne, and adding *Andrews v. Broughton,* 78 Mo. App., 179; *Russell v. Briggs,* 165 N. Y., 500, 59 N. E., 303; *Dyer v. Graves,* 37 Vt., 369; *Clark v. Davidson,* 53 Wis., 317, 10 N. W., 384. In the same section the text states that the contrary view has been reached, based upon the principle that not having performed that part of the contract relating to realty, the promisor "ought" to be compelled to perform the other relating to personalty. See, also, Williston on Contracts, sec. 532. In 49 Am. Jur., Statute of Frauds, p. 852, sec. 549, both views are stated with impartiality and supporting decisions cited.

In *Quirk v. Bank of Commerce & Trust Co.,* 244 Fed. Rep., 682, 687, it is said:

"And when the promisor has the option of giving realty or personalty, his promise is wholly unenforceable because the enforcement of one of the alternatives would be but a wedge to secure the enforcement of the other."

In *Wolfskill v. Wells* (Mo.), 134 S. W., 51, where the oral agreement was to deed one-half interest in land or account for one-half its value at $35 an acre, the Court held that the contract was inseparable, and observed: "As made it was an inseparable contract. It is not disputed that that part of it to convey the land was invalid under the statute of frauds. So the case would stand with one part of the contract within and one part without the statute. In such instance the entire contract is invalid." To the same effect is *Gernhert v. Straeffer's Executor* (Ky.), 189 S. E., 1141, where the agreement was to will property, or if it were sold or not willed, to will the value of the property, the Court held the agreement invalid under the statute of frauds as presenting an inseparable contract.

Similarly, in *Patterson v. Cunningham, supra,* where, with respect to a promise presenting the alternative of land or money, the Court said: "This, being a promise in the alternative, does not relieve the case from the objection. The alternative was that the election of the defendant and Thomas to convey the land and deliver the articles or pay the money."

*Contra, Welsh v. Welsh,* 148 Minn., 235, 181 N. W., 356; 13 A. L. R., 267, and cited cases. See, also, Annotation 271, noted *supra.*

But it is not necessary for us to adopt literally either of these contrary views in the generalized form where the controversy really exists in order to determine the question before us. It must be clear, we think, that although it be conceded that under certain conditions alternative promises may be subject to the rule of separability, it does not follow that it may be applied in every case by rule of thumb. The facts of the

particular case must be strongly controlling. No reliable text writer, as far as we are aware, has gone so far as to intimate that the dual or multiple promises may be separated, merely because stated in the alternative, when they cannot be separated without violence to a substantial interdependence which may have had an effect on the making of the contract. Many cases have paid deference to the form, rather than the substance, of the promise in a desire to save some part of the contract.

In 24 Michigan Law Review, 749-785, cited in Williston on Contracts, sections 488, 579 (a), and elsewhere, there is an interesting discussion of the subject. Admitting that the weight of authority is against the theory of separability, it is suggested that in many of the instances dealt with, the disjunctive promise does not present a true alternative—that is, where the alternatives are so independent of each other, either may be adopted with indifference. They run all the way from the simple instance of a true alternative up to the point where the promise, which is supposedly without the statute of frauds, is merely a substitution, or a statement of liquidated damages for the nonperformance of the alternative which is within the statute. Obviously no court can follow the disjunctive through this ascending scale without retroactively challenging the freedom of contract, or running counter to positive principles of law. When it passes the first stage, the formulary test becomes inadequate. To put it graphically, separability must then be referred to incision rather than to exploration of an existing fissure. Judicial disregard for that part of the contract which stands without the statute does not eliminate it from the actual contract or from the minds of the parties in which that contract was generated and perfected by mutual understanding.

As we have seen, the promise was not general—just to will land—but specifically to will the Glenn Avenue home; and no specific sum of money is mentioned by the promisor—except by reference to the home place, and then merely "its value." Such a promise leads to the inference that "value in money" was not merely alternative—it was contingent—a substitute for the primary consideration and not the mere measure of a true and independent alternative. It might be said, without violation of the sense, that the promise was if she failed to will the home place, she would will its value in money. This home place therefore might well be considered the primary consideration in the minds of the parties; and we cannot say that a reasonable hope that this might be the choice of the promisor did not play a part in inducing the plaintiffs to accede to the agreement. They knew, of course, that they must abide by her choice. But that the choice might be left to the law was hardly within their contemplation. Plaintiffs were familiar with Mrs. Pegram's home on Glenn Avenue—they knew she had it. Whether they, or anyone else,

had any knowledge of her ability to provide the money instead of the Glenn Avenue home is not clear from this record.

We do not say that there are not instances in which the theory of separability may be applied to a promise alternative in form and fact. But we do hold that the facts of the case at bar are not favorable to its application.

The only other question presented by the demurrers is the bar of the statute of limitations. Since the performance of Mrs. Pegram's promise must be referred to her death, the statute does not apply. *Grantham v. Grantham, supra.*

Other matters discussed in the brief—such as the measure of recovery—are not before us at this time. They are fully covered, however, in several of the cases we have cited, and largely in the leading case of *Grantham v. Grantham, supra,* which we have so freely cited.

There was error in sustaining the demurrers to the complaints, and the judgment to that effect is

Reversed.