JOHN L. TURNER v. ATLANTIC MORTGAGE AND INVESTMENT COMPANY

No. 7621SC710

(Filed 16 March 1977)

1. Contracts § 27— earning commissions — purchase of stock — oral contract — sufficiency of evidence

Evidence was sufficient to support the jury's finding that, pursuant to an oral agreement between plaintiff and the shareholders of defendant company, plaintiff was entitled to earn commissions which could then, in turn, be used to buy shares in defendant company, and

that plaintiff was entitled to sue for the commissions earned and forego the stock.

**2. Contracts § 13; Uniform Commercial Code § 64— payment of commissions — purchase of stock — divisible contract**

Where the contract between the parties entitled plaintiff to earn commissions which could then be used to buy shares in defendant company, the contract was divisible into two related, but not interdependent, promises: (1) to pay plaintiff commissions in consideration of fees generated, and (2) to sell plaintiff shares in consideration for, and in proportion to, the commissions already earned and the number of years spent working for defendant. Since the contract was divisible and the promise to pay commissions could be enforced separately from the promise to sell stock in exchange for the commissions, the statute of frauds, G.S. 25-8-319(a), did not apply.

**3. Contracts § 4— fees previously generated — commissions subsequently paid — consideration**

In an action by plaintiff to recover the amount of commissions he allegedly earned as a mortgage banker for defendant, or, in the alternative, stock in defendant company to which he was allegedly entitled pursuant to an oral contract, defendant's contention that plaintiff gave no consideration for so much of his commissions as were based on fees generated during the fiscal year preceding the negotiation of plaintiff's commission and stock agreement is without merit, since plaintiff was not promised commissions in consideration of past services, but instead, in consideration of his promise to continue working and to perform future services, he was promised additional compensation calculated as commissions on fees previously generated by plaintiff.

APPEAL by defendant from *Crissman, Judge.* Judgment entered 14 May 1976 in Superior Court, FORSYTH County. Heard in the Court of Appeals 9 February 1977.

The defendant, Atlantic Mortgage and Investment Company (Atlantic), is a mortgage brokerage company, and J. P. Lauffer, Jr., President, and Thomas W. Wharton, Executive Vice President, are its sole shareholders. On or about 1 April 1972, Lauffer and Wharton hired the plaintiff, John L. Turner, as a mortgage banker. His duties were to arrange mortgage loans between builders and lenders for which services Atlantic received commissions equal to one percent of the amount of the loans. When Turner joined Atlantic he had no experience in mortgage banking, but during the time he was with the corporation, between April 1972 and September 1974, he was promoted to vice president, and his compensation rose to a straight salary of $27,500. In addition, plaintiff alleges that in August

1973, he and Atlantic negotiated an oral agreement whereby plaintiff was to receive a total of 20% of the outstanding shares in Atlantic over the period 1973-1976, at the rate of no more than 5% each year. The exact amount was tied to the amount of commissions earned each year by plaintiff.

In September 1974, Atlantic discharged plaintiff without ever having given him the shares allegedly owed to him. Plaintiff sued to recover the amount of the commissions he allegedly earned, $53,300.00, or, in the alternative, the stock which was to be his. At the end of the trial he elected to take the commissions instead of the stock. The jury awarded plaintiff $50,000. Atlantic appeals. Such other facts as are necessary will appear in the opinion.

*Deal, Hutchins and Minor, by William K. Davis, for plaintiff appellee.*

*Hatfield and Allman, by Weston P. Hatfield, James E. Humphreys, Jr., and R. Bradford Leggett, for defendant appellant.*

ARNOLD, Judge.

Defendant contends that the court erred by failing to find that the alleged contract was barred by the statute of frauds, G.S. 25-8-319, because it was a contract for the sale of securities. It argues that the alleged contract was not an employment contract but a contract for the sale of stock. Defendant's position is that the "commissions" were not earned by plaintiff, nor did they accrue to him, but instead these "commissions" were credits, calculated according to a formula based on fees which plaintiff generated which were intended as the measure of the amount of stock plaintiff was to receive at the end of each year.

The jury answered "yes" to the following issue: "Did the defendant enter into an agreement with the plaintiff, as alleged in the complaint?" The agreement as set out in the complaint is as follows:

"IV. On or about August, 1973, the defendant . . . in consideration of plaintiff's promise and agreement to continue working with the defendant as a mortgage banker and to concentrate on furthering the defendant's business . . . contracted, agreed and promised that plaintiff would have the *option* to purchase five percent (5%) of the shares of

the stock of the defendant in each of the years 1973, 1974, 1975, and 1976, for a total of twenty percent (20%), at the purchase price of $23,000.00 for each five percent (5%), *with commissions earned* by plaintiff during defendant's corresponding fiscal years to be applied toward the purchase price of the stock." (Emphasis added.)

[1] It was determined by the jury then that the oral agreement as alleged in the complaint is the contract between the parties. That agreement provided that if plaintiff continued to work for defendant he would have the option to apply commissions earned (and not other funds) to the purchase of Atlantic stock. Earning the commissions is a condition precedent to the purchase of the stock, but the commissions are also compensation for services rendered by plaintiff. If evidence supports the jury's finding concerning the agreement, plaintiff had the option to recover either the commissions earned or to purchase the stock with the commissions. Plaintiff elected to take the commissions, and that was the only remedy presented to the jury.

Defendant raised the question of whether the jury's findings were supported by the evidence by moving for a directed verdict and judgment *non obstante veredicto*. Denial of the motions was proper since evidence in the light most favorable to plaintiff supports the findings. *Dickinson v. Pake*, 284 N.C. 576, 201 S.E. 2d 897 (1974); *Teachey v. Woolard*, 16 N.C. App. 249, 191 S.E. 2d 903 (1972).

According to plaintiff's testimony, he reached an agreement with Lauffer and Wharton, acting as officers and directors of Atlantic, whereby he would be paid commissions which, in turn, would be used to buy shares in Atlantic. The agreement was a compromise. According to Turner, he wanted " . . . to have an opportunity to buy stock in the company . . . . " Lauffer and Wharton, however, wanted to pay him a "straight commission so that [he] could earn lots of money"; they wanted him " . . . to take the commissions out rather than leave them in the company to buy stock. . . . " Turner told Lauffer and Wharton that " . . . the only way [he] could be truly satisfied . . . would be to have the stock. . . . " He told them that if a satisfactory arrangement could not be reached, he would probably leave. Accordingly, they agreed upon the proposal " . . . of a commission and stock purchase." As Turner described it in his testimony, "What this was was that as I earned in commis-

Turner v. Investment Co.

sions sufficient dollars to buy stock, then those commissions would be applied toward the purchase of stock [and] allow me to buy 5% per year over a four year period totaling 20% . . . . I was to have a commission and to use those commissions to buy stock."

On cross examination of Mr. Turner, Atlantic attempted to show that the commissions were not really earnings but only a measure of the quantity of stock to be transferred. Under cross examination, Mr. Turner said:

"  . . . The commissions I was earning were all to go toward buying the stock in Atlantic Mortgage.

"As to whether that was the sole purpose of the arrangement, that was my purpose for the commissions. It was not the sole purpose at all. The commissions were—it was my desire that the commissions earned buy stock and any extra [be held until the next year to offset possible shortages]. Nothing was said about the situation which would arise if there was any money left over after the stock had been purchased.

"As to whether it is a fact that I never had any reason to believe that I would ever get any money in cash for these commissions, that is not correct. That was not the discussion. The commissions earned were a way that I could earn stock that I was buying."

In addition Mr. Turner also told the jury that Mssrs. Lauffer and Wharton several times assured him that his stock certificates, representing his first 5% interest, were being transferred to him. They also introduced him to others as a part owner of the company.

Of course, the evidence above is not all of the evidence, but it clearly supports the jury's finding that the contract was as alleged in the complaint. It reveals that Mr. Turner was entitled to earn commissions which could then, in turn, be used to buy shares in Atlantic. It shows that—nothing else appearing—Mr. Turner was entitled to sue for the commissions earned and forego the stock. He brought such a suit, and the jury looked favorably upon it.

[2]  Defendant also contends that even if an agreement between the parties was reached it was an "entire" contract and

not "divisible." Atlantic argues that the contract has to be enforced as a whole or not at all. Plaintiff, it says, cannot elect to collect his commissions instead of the stock. The only remedy, according to the defendant, is enforcement of the ultimate promise to transfer stock. 3 N.C. Index 3d, Contracts, § 13; 17 Am. Jur. 2d, Contracts, § 324. Atlantic contends, moreover, that because the contract is entire it is ultimately a contract for the sale of securities and unenforceable under the statute of frauds, G.S. 25-8-319(a), since it is not written.

Our Supreme Court has said:

"A contract is entire, and not severable, when by its terms, nature and purpose it contemplates and intends that each and all parts, material provisions, and the consideration, are common each to the other and interdependent. Such a contract possesses essential oneness in all material respects. The consideration of it is entire on both sides. . . . [S]o . . . when two or more things are sold together for a gross sum, the contract is not severable. The seller is bound to deliver the whole . . . , and buyer to pay the whole price. . . .

"On the other hand, a severable contract is one in its nature and purpose susceptible of division and apportionment, having two or more parts, in respect to matters and things contemplated and embraced by it, not necessarily dependent upon each other. . . . Hence, an action may be maintained for a breach of it in one respect and not necessarily in another, or for several breaches, while in other material respects it remains intact."

*Wooten v. Walters,* 110 N.C. 251, 254, 14 S.E. 734 (1892), *quoted in Lumber Co. v. Builders, Inc.,* 270 N.C. 337, 341, 154 S.E. 2d 665 (1967).

The contract, as found by the jury, is divisible and not entire. In consideration for remaining with Atlantic plaintiff received commissions calculated on the basis of the preceding year's fees. This commission in turn was to be consideration for the purchase of no more than five percent of defendant's stock. By continuing to work plaintiff was also to continue accruing commissions, and upon completion of a year's work he acquired the right to spend his commissions to purchase another five percent of defendant's stock. This was to continue, under the agreement, through 1976.

Turner v. Investment Co.

The contract is divisible into two related, but not interdependent, promises: (1) to pay Turner commissions in consideration of fees generated; and (2) to sell Turner shares in consideration for, and in proportion to, the commissions already earned, and the number of years spent working for Atlantic. This is not the situation where a lump sum is promised in consideration for machinery and necessary attachments. *See, McLawhon v. Briley*, 234 N.C. 394, 67 S.E. 2d 285 (1951). Nor is this the situation present in *Neal v. Wachovia Bank & Trust Company*, 224 N.C. 103, 29 S.E. 2d 206 (1944), cited by Atlantic, where, in consideration for services rendered, a person promised to devise either his house or its value to his benefactors. In both these cases, a single consideration supported all the promises. Further, the promises—for machinery and additional necessary equipment, for a house or its value—are closely related. These contracts are entire. But in the case at bar, the fact that the payment of commissions is a necessary step for the transfer of shares does not make indivisible the promises to do each. The fact that Turner wanted the stock and was willing to use his commissions as a means of acquiring the stock does not make the contract entire.

Since the contract is divisible and the promise to pay commissions can be enforced separately from the promise to sell stock in exchange for the commissions, the statute of frauds, G.S. 25-8-319(a), does not apply.

[3] Defendant maintains, also, that, as a matter of law, plaintiff gave no consideration for so much of his commissions as are based on fees generated during fiscal year 1973. The work for 1973 was done, fees were collected by defendant, and plaintiff's salary was paid before plaintiff negotiated his commission and stock agreement with Lauffer and Wharton. Therefore, defendant contends, commissions paid on the basis of fees already generated have only a past consideration to support them. This argument is unpersuasive. Plaintiff's employment contract with defendant was terminable at will. He was not promised commissions in consideration of past services, but instead, in consideration of his promise to continue working and perform future services, he was promised additional compensation calculated as commissions on fees previously generated by plaintiff. *See* 1 Williston on Contracts (3d ed.), §§ 134 and 137A; Restatement of Contracts, §§ 76 and 83. The promise to pay plaintiff commissions on fees previously generated was con-

sideration for future services to be rendered, and not for past services.

Defendant brings forth other assignments of error and arguments which have been carefully considered. No prejudicial error is found.

No error.

Judges PARKER and MARTIN concur.