IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-798

Filed 3 June 2026

Currituck County, No. 23CVS000410-260

OUTER BANKS VENTURES, INC., Plaintiff,

v.

CURRITUCK COUNTY, Defendant.

Appeal by Plaintiff from Order entered 25 April 2025 by Judge Jerry R. Tillett in Currituck County Superior Court. Heard in the Court of Appeals 10 February 2026.

> *Waldrep Wall Babcock & Bailey PLLC, by Kevin L. Sink, Chris W. Haaf, and Jack H. O'Neal, II, for Plaintiff-Appellant.*
>
> *The Brough Law Firm, PLLC, by G. Nicholas Herman and Megan E. Morgan, for Defendant-Appellee.*

HAMPSON, Judge.

## **Factual and Procedural Background**

Outer Banks Ventures, Inc., (Plaintiff) appeals from an Order denying its Motion for Partial Summary Judgment and granting partial summary judgment in favor of Currituck County (Defendant). The Record before us tends to reflect the following:

On 6 March 1986, Carolina Water Service, Inc., of North Carolina (CWS) entered into a written agreement with Corolla Light Venture, which consisted of

Plaintiff and Northsand, Inc., for water and sewage service (the 1986 Agreement). Plaintiff and Northsand, Inc., subsequently merged, leaving Plaintiff as the surviving entity entitled to all rights and benefits under the 1986 Agreement with CWS.

Under the 1986 Agreement, Plaintiff, a real estate developer, agreed to construct and install the water and sewer facilities for a residential development, after which ownership of the facilities would be transferred to CWS to operate and maintain the water and sewer system. Specifically, the 1986 Agreement provided, in relevant part:

> 3. [CWS] shall reimburse [Plaintiff] for the water and sewer facilities and equipment installed pursuant to this Agreement as follows:
>
> . . . .
>
> b. Contingent or deferred payments in the amount of $250.00 for each additional water and sewer customer ("Customer") attaching to the water and sewer system in the Development, commencing with the 50th Customer and continuing throughout the Development.
>
> c. [CWS] hereby agrees to reimburse [Plaintiff] for any and all tap-in, connection, and impact fees received from customers connecting to the water and sewer system in the Development and taking service thereby. No tap-in or connection fee will be charged by [CWS] unless specifically requested by [Plaintiff] in writing. . . .
>
> d. Contingent payments and reimbursements will be made by [CWS] to [Plaintiff] semi-annually, based upon the number of utility customers connected during the preceding six month period.
>
> . . . .

6. The failure of either party hereto to enforce any of the provisions of this Agreement or the waiver thereof in any instance by either party shall not be construed as a general waiver or relinquishment on its part of any such provisions, but the same shall, nevertheless, be and remain in full force and effect.

Pursuant to an agreement dated 25 February 2011, Defendant purchased certain water utility assets from CWS, including the system covered under the 1986 Agreement. On or about 18 July 2011, CWS, as assignor, and Defendant, as assignee, entered into an Assignment and Assumption of Developer Agreements, Contracts and Leases, by which Defendant assumed CWS's obligations under the 1986 Agreement, including the payment and reimbursement obligations expressed above.

On 6 September 2011, Defendant received its first tap-in, connection, or development fee from a customer since the 18 July 2011 assignment. Defendant did not reimburse Plaintiff for that fee, nor did it make any other payments or reimbursements to Plaintiff under the Agreement in the following years.

On 17 October 2023, Plaintiff filed a Complaint alleging Defendant had breached its obligations under the 1986 Agreement (as assumed in the 18 July 2011 assignment). Defendant did not dispute it had failed to make such payments to Plaintiff but asserted Plaintiff's claim was barred by the two-year statute of limitations under N.C. Gen. Stat. § 1-53(1). Plaintiff, for its part, argued it was entitled to payments made in the two years preceding the filing of its Complaint because, in its view, the 1986 Agreement is an installment contract. The parties filed

cross-motions for Partial Summary Judgment asserting these respective positions.

On 25 April 2025, the trial court entered an Order denying Plaintiff's Motion for Partial Summary Judgment, granting Defendant's Motion for Partial Summary Judgment, and dismissing the case. On 20 May 2025, Plaintiff timely filed Notice of Appeal.

## Issue

The dispositive issue on appeal is whether Plaintiff's claim for Breach of Contract is barred by the two-year statute of limitations under N.C. Gen. Stat. § 1-53(1).

## Analysis

"Our standard of review of an appeal from summary judgment is de novo[.]" *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (citation and quotation marks omitted). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2025).

"A party moving for summary judgment may prevail if it meets the burden (1) of proving an essential element of the opposing party's claim is nonexistent, or (2) of showing through discovery that the opposing party cannot produce evidence to support an essential element of his or her claim." *Lowe v. Bradford*, 305 N.C. 366,

369, 289 S.E.2d 363, 366 (1982) (citation omitted). "If the moving party meets this burden, the non-moving party must in turn either show that a genuine issue of material fact exists for trial or must provide an excuse for not doing so." *Id.* (citations omitted). "The non-moving party 'may not rest upon the mere allegations of his pleadings.'" *Id.* at 370, 289 S.E.2d at 366 (quoting N.C. Gen. Stat. § 1A-1, Rule 56(e)).

Plaintiff argues the trial court erred in denying its Motion for Partial Summary Judgment and granting partial summary judgment in favor of Defendant.[1] Specifically, Plaintiff contends the 1986 Agreement should be treated as an installment contract for limitations purposes and asserts each unfulfilled six-month payment is a separate breach of contract claim for which Plaintiff should be allowed to pursue any claims arising within two years before filing suit.[2] We disagree.

"We have long recognized that a party must initiate an action within a certain statutorily prescribed period after discovering its injury to avoid dismissal of a claim."

---

[1] To be clear, "[t]he denial of a motion for summary judgment is an interlocutory order and is not appealable." *Harris v. Walden*, 314 N.C. 284, 286, 333 S.E.2d 254, 256 (1985). Thus, to the extent Plaintiff seeks review of the denial of its Motion for Partial Summary Judgment, such review is unavailable.

However, a grant of partial summary judgment becomes reviewable after the entry of a final judgment. *D.G. II, LLC v. Nix*, 213 N.C. App. 220, 229, 713 S.E.2d 140, 147 (2011) ("The jury verdict was a final determination as to damages. Therefore, at that point, the trial court's order granting defendants' motion for partial summary judgment became an appealable order."). Therefore, while we may not review the denial of Plaintiff's Motion for Partial Summary Judgment, we may review the trial court's Order to the extent it granted Defendant's Motion for Partial Summary Judgment and dismissed the action in its entirety. *See id.*; *Goodman v. Holmes & McLaurin Att'ys at L.*, 192 N.C. App. 467, 471, 665 S.E.2d 526, 530 (2008) (citing *Combs & Assocs. v. Kennedy*, 147 N.C. App. 362, 367, 555 S.E.2d 634, 638 (2001)) (explaining order granting partial summary judgment is final and appealable when no claims are left to be determined).

[2] Neither party disputes the applicable statute of limitations is two years. *See* N.C. Gen. Stat. § 1-53(1) (2025).

*Christenbury Eye Center, P.A. v. Medflow, Inc.*, 370 N.C. 1, 5, 802 S.E.2d 888, 891 (2017) (citing *Shearin v. Lloyd*, 246 N.C. 363, 370, 98 S.E.2d 508, 514 (1957)). "The purpose of a statute of limitations is to afford security against stale demands, not to deprive anyone of his just rights by lapse of time." *Id.* at 5-6, 808 S.E.2d at 891 (citation and quotation marks omitted). Thus, "statutes of limitations are inflexible and unyielding and operate without regard to the merits of a cause of action." *Id.* at 6, 802 S.E.2d at 891-92 (citation and quotation marks omitted).

"It is well settled that 'where the right of a party is once violated the injury immediately ensues and the cause of action arises.' " *Id.* (quoting *Sloan v. Hart*, 150 N.C. 269, 274, 63 S.E. 1037, 1039 (1909)). "A cause of action is complete and the statute of limitations begins to run upon the inception of the loss from the contract, generally the date the promise is broken." *Id.* (citing *Jewell v. Price*, 264 N.C. 459, 461, 142 S.E.2d 1, 3 (1965)).

"An 'installment contract' is one which requires or authorizes the delivery of goods in separate lots to be separately accepted, even though the contract contains a clause 'each delivery is a separate contract' or its equivalent." N.C. Gen. Stat. § 25-2-612(a) (2025). Under an installment contract, "the statute of limitations runs against each installment as it becomes due, thus permitting actions falling within the limitations period while precluding those that fall outside of it." *Christenbury*, 370 N.C. at 7, 802 S.E.2d at 893 (citing *Shoenterprise Corp. v. Willingham*, 258 N.C. 36, 39, 127 S.E.2d 767, 770 (1962)). "Though the term 'installment contract' technically

applies to contracts for the sale of goods, for limitations purposes this principle has been extended to some agreements falling outside the technical definition." *Id.* (citing *Martin v. Ray Lackey Enters., Inc.*, 100 N.C. App. 349, 357, 396 S.E.2d 327, 332 (1990)).

"Whether an agreement should be treated as an installment contract depends not on the number of promises on either or both sides but on whether there has been a single expression of mutual assent to all the promises as a unit." *Id.* at 8, 802 S.E.2d at 893 (alterations and citation omitted). "[T]he hallmark of an installment contract is that its terms contain 'two or more distinct items, both in the agreement to perform and in the promise of compensation, capable of apportionment or separate allocation the one to the other, as indicated in the contract itself.' " *Id.* (quoting *Neal v. Wachovia Bank & Tr.*, 224 N.C. 103, 107, 29 S.E.2d 206, 208 (1944)) (internal quotation marks omitted).

Plaintiff contends the 1986 Agreement is an installment contract. In so arguing, Plaintiff points to cases it believes are distinguishable to the facts at bar—cases where we held the agreement at issue was *not* an installment contract.[3] Of these cases, we find the facts of *Christenbury* particularly instructive. There, the parties had entered into an agreement whereby the plaintiff agreed to assign its

---

[3] The cases cited by Plaintiff include: *Christenbury*, 370 N.C. 1, 802 S.E.2d 888 (2017); *Martin*, 100 N.C. App. 349, 396 S.E.2d 327 (1990); *U.S. Leasing Corp. v. Everett, Creech, Hancock, and Herzig*, 88 N.C. App. 418, 363 S.E.2d 665 (1988); and *Liptrap v. City of High Point*, 128 N.C. App. 353, 496 S.E.2d 297 (1998).

rights in certain software to the defendants, and the defendant agreed to, among other things, provide the plaintiff with monthly written sales reports, monthly fee payments, and royalties based on its sales of the software. *Id.* at 2-3, 802 S.E.2d at 889-90. The defendant never performed any of its obligations under the agreement. *Id.* at 3, 802 S.E.2d at 890. However, only after fourteen years had elapsed did the plaintiff file an action for breach of contract. *Id.* The defendant asserted the plaintiff's entire suit was barred by the statute of limitations; the plaintiff, as here, contended the agreement should be treated as an installment contract, "thus enabling plaintiff to seek recovery on royalty payments due within the three years before the filing of its complaint." *Id.* at 4, 802 S.E.2d at 890 (citing *Martin*, 100 N.C. App. at 357, 396 S.E.2d at 332). Our Supreme Court disagreed with the plaintiff, noting: "Because the terms of the Agreement demonstrate a mutual dependency between the promised performance by plaintiff and the promised performances by defendants, the consideration supporting the Agreement is unified and incapable of apportionment." *Id.* at 7, 802 S.E.2d at 892.

The Court explained:

> The Agreement sets out that, in a one-time assignment, plaintiff conveyed its rights in the Enhancements in exchange for defendants' various promises to provide monthly sales reports, refrain from selling the Enhancements in North Carolina and South Carolina absent plaintiff's express consent, and pay royalties. The terms of the Agreement, therefore, demonstrate a mutual dependency between the promises provided by the parties as consideration to support the Agreement, inextricably tying plaintiff's assignment of rights in the Enhancements to

defendants' promised performance.

*Id.* at 8, 802 S.E.2d at 893. Additionally, the agreement lacked "any indication that the parties intended their promises to be divisible, severable, or otherwise capable of apportionment." *Id.* (citation omitted).

Here, as in *Christenbury*, the terms of the 1986 Agreement set out that Plaintiff would install the water and sewer systems in exchange for Defendant's promise to make certain periodic payments and reimbursements. Thus, the terms of the 1986 Agreement "demonstrate a mutual dependency between the promises provided by the parties as consideration to support" the 1986 Agreement, tying Plaintiff's construction of the water and sewer facilities to Defendant's promised performance. *Id.* at 8, 802 S.E.2d at 893. And just as the agreement in *Christenbury* lacked any indication the parties intended their promises to be divisible, severable, or otherwise capable of apportionment, the 1986 Agreement contains no such provision.

However, Plaintiff contends the present case is distinguishable from *Christenbury* because here "payments are due every six months and [do] not depend on any decision by Defendant – they were obligated to pay Plaintiff twice a year." But as Plaintiff states in its own Reply Brief: "Under the express terms of the 1986 Agreement, [Defendant's] obligation to 'reimburse' the Plaintiff does not accrue until a six-month period during which there were actual utility connections concludes." Thus, it follows that Defendant's obligation to pay is dependent on whether

Defendant takes action to connect new utility customers.

Indeed, the Court in *Christenbury* noted the plaintiff's installment contract argument "fail[ed]" where the decision to make sales and, thus, trigger the royalty provisions of the agreement rested entirely in the defendants' hands. *Id.* at 9, 802 S.E.2d at 893. And here, the decision to connect customers to the utility system and trigger the reimbursement provision rests entirely in Defendant's hands.[4] Accordingly, under *Christenbury*, the 1986 Agreement is not an installment contract.

Moreover, whether an agreement is an installment contract does not depend on the number of promises made on either side but on whether, as here, "there has been a single expression of mutual assent to all promises as a unit." *Id.* at 8, 802 S.E.2d at 893. Thus, Plaintiff's attempt to characterize the 1986 Agreement as an installment contract on the basis it calls for semi-annual payments is likewise without merit.

In *Liptrap v. City of High Point*, which Plaintiff also argues is distinguishable from the present case, the City of High Point enacted an ordinance providing annual longevity payments for City employees that would increase in five-year increments. 128 N.C. App. at 354, 496 S.E.2d at 818. The City later passed a resolution freezing

---

[4] The dissent contends the payments here are "self-executing[.]" However, no provision in the 1986 Agreement expressly supports this assertion. Further, to the extent the dissent suggests the 1986 Agreement is an "executory contract" or that the "Savings Provision" in the 1986 Agreement should guide our analysis, these arguments were not raised by Plaintiff and issues not "presented and discussed in a party's brief" are "deemed abandoned." N.C. R. App. P. 28(a) (2025).

the amount of annual longevity payments. *Id.* Plaintiffs-employees sued the City four years after the pay freeze, arguing the City's resolution and subsequent refusals to pay additional amounts constituted separate breaches of contract, each of which triggered a new statute of limitations period and entitled the plaintiffs to recover the amounts that allegedly should have been paid to them beginning two years prior to the filing of the action. *Id.* at 354-55, 496 S.E.2d at 818.

The Court, in holding the agreement at issue was *not* an installment contract, distinguished the facts before it from those of *Martin v. Ray Lackey Enterprises, Inc.*, and *U.S. Leasing Corp. v. Everett, Creech, Hancock and Herzig*—two other cases wherein we held the agreements *were* installment contracts. *Id.* at 357-358, 496 S.E.2d at 819-20. In *Martin*, the plaintiff had leased certain property to the defendants. The lease provided the defendants were required to "pay and discharge . . . all real estate taxes and assessments levied upon and assessed against the premises[.]" 100 N.C. App. at 351, 396 S.E.2d at 329. The lease also contained an express provision defining what constituted a breach of the agreement:

> *Section 13.01: Default.* It shall be an event of default by Lessee hereunder if Lessee shall fail to pay the rent provided for herein or to observe or perform any of the obligations of Lessee otherwise provided for herein[.]

*Id.*

The plaintiff filed an action against the defendants for allegedly breaching the lease by failing to pay the real estate taxes as they became due. *Id.* at 352, 396 S.E.2d

at 329.  On appeal, we held that since the defendants' tax obligation became due on an annual basis, the statute of limitations ran independently as to each annual default.  *Id.* at 357-58, 396 S.E.2d at 332.  However, we also noted the language of the lease made clear the "intent of the parties was that breach would occur when the lessee failed to pay the real estate taxes levied against the property as they came due." *Id.* at 354, 396 S.E.2d at 331.

And in *U.S. Leasing Corp.*, the plaintiff had filed an action alleging it had leased office equipment to the defendant and the defendant had defaulted in making its monthly payments under the lease agreement, which provided for a total of sixty monthly payments.  88 N.C. App. at 421-22, 363 S.E.2d at 667.  A provision in the parties' agreement expressly allowed the plaintiff "to seek recovery of each payment as it became due." *Id.* at 427, 363 S.E.2d at 669.  Thus, we held each payment required by the agreement was a debt which renewed the statute of limitations as to that individual payment.  *Id.* at 427, 363 S.E.2d at 670.

The Court in *Liptrap* found *Martin* distinguishable because there was "no express language defining what constitutes a breach of the parties' agreement[,]" 128 N.C. App. at 357, 496 S.E.2d at 820, and found *U.S. Leasing Corp.* distinguishable because there was no express provision allowing the plaintiffs to "seek recovery of each longevity payment as it became due[,]" *id.* at 357-58, 496 S.E.2d at 820 (citation and quotation marks omitted).  Here, as in *Liptrap*, and unlike in *Martin* and *U.S. Leasing Corp.*, there is no express language defining what constitutes a default under

the 1986 Agreement, nor is there an express provision allowing Plaintiff to seek recovery of the payments as they become due. Plaintiff's attempts at asserting otherwise are unpersuasive.

Plaintiff's Complaint reveals it had notice of its injury as early as 2011:

> 27. Plaintiff is informed and believes that Defendant has been charging tap-in, connection, and impact fees to water and sewer utility customers in the Affected Area since the execution of the APA and Assignment.
>
> . . . .
>
> 39. During the period commencing as of July 18, 2011 and continuing to the present date, Defendant has refused and still refuses to account for or pay over Plaintiff the amounts due to Plaintiff as alleged[.]

However, Plaintiff did not raise any concern regarding its rights under the 1986 Agreement until the present action. Thus, "[a]ny increase in plaintiff's injury therefore represents the 'continual ill effects from an original violation[ ]' and 'aggravation of the original breach[.]' " *Christenbury*, 370 N.C. at 6, 802 S.E.2d at 892 (first quoting *Williams v. Blue Cross Blue Shield of N.C.*, 357 N.C. 170, 179, 581 S.E.2d 415, 423 (2003), then quoting *Pembee Mfg. Corp. v. Cape Fear Constr. Co., Inc.*, 313 N.C. 488, 493, 329 S.E.2d 350, 354 (1985)) (brackets omitted). Therefore, because Plaintiff "had notice of its injury yet failed to assert its rights[ ]" within the two year statute of limitations period, its claims are time barred. *Id.* at 6-7, 802 S.E.2d at 892. Consequently, the trial court did not err in granting Defendant's Motion for Partial Summary Judgment.

## <u>Conclusion</u>

Accordingly, for the foregoing reasons, we affirm the trial court's Order.


AFFIRMED.

Judge ZACHARY concurs.

Judge TYSON dissents by separate opinion.

No. COA25-798 – *Outer Banks Ventures, Inc. v. Currituck Cnty.*

TYSON, Judge, dissenting.

The majority's opinion erroneously affirms Defendant's Motion for Partial Summary Judgment. The majority's opinion also erroneously concludes all of Plaintiff's claims are barred by the two-year statute of limitations under N.C. Gen. Stat. § 1-53(1) (2025).

The order of the superior court is properly reversed. Plaintiff's claims arising within the applicable two-year period are not barred by the two-year statute of limitations. I respectfully dissent.

## I. Rules of Contract Interpretation

The well-settled elements of a valid contract are offer, acceptance, consideration, and mutuality of assent to the contract's essential terms. *Snyder v. Freeman*, 300 N.C. 204, 218, 266 S.E.2d 593, 602 (1980) ("The essence of any contract is the mutual assent of both parties to the terms of the agreement so as to establish a meeting of the minds.").

"A contract is simply a promise supported by consideration, which arises . . . when the terms of an offer are accepted by the party to whom it is extended." *McLamb v. T.P., Inc.*, 173 N.C. App. 586, 588, 619 S.E.2d 577, 580 (2005) (citation omitted). "Generally, a party seeking to enforce a contract has the burden of proving the essential elements of a valid contract." *Orthodontic Ctrs. Of Am., Inc. v. Hanachi*, 151 N.C. App. 133, 135, 564 S.E.2d 573, 575 (2002) (citation omitted).

"The heart of a contract is the intention of the parties, which is ascertained by

the subject matter of the contract, the language used, the purpose sought, and the situation of the parties at the time." *Pike v. Wachovia Bank & Trust Co.*, 274 N.C. 1, 11, 161 S.E.2d 453, 462 (1968) (citations omitted).

## II. Savings Provision

The 1986 Agreement provided:

> 6. The failure of either party hereto to enforce any of the provisions of this Agreement or the waiver therof in any instance by either party shall not be construed as a general waiver or relinquishment on its part of any such provisions, but the same shall, nevertheless, be and remain in full force and effect.

Defendant purchased by agreement dated 25 February 2011 assets from CWS, including the Carolla Light Water System under the operative 1986 Agreement. On 18 July 20 Defendant entered into an Assignment and Assumption of Developer Agreements, Contracts and Leases. In North Carolina, all contracts are presumed to be assignable and unless otherwise agreed, a successor-in-interest of an assignment is subject to all obligations of its predecessor. This Court affirmed a trial court instruction for the agreement to "be construed against the party who drafted the instrument ... [although the current party] did not in fact draft the . . . agreement." *Mosley & Mosley Builders, Inc. v. Landin Ltd.*, 97 N.C. App. 511, 525, 389 S.E.2d 576, 584 (1990). *See*: *Rogers v. Hall*, 227 N.C. 363, 42 S.E.2d 347 (1947). Defendant assumed all of CWS's obligations under the 1986 Agreement.

Defendant received its first tap-in fee from a Carolla Light Water System

2

customer on 6 September 2011.  Defendant did not reimburse Plaintiff for this fee or make any other payments, reimbursements, or disbursements to Plaintiff as required under the Agreement it had accepted and adopted..

Plaintiff correctly asserts payments and reimbursements received by Defendant from and after 6 March 2021 are not barred by the statute of limitations. Plaintiff alleges four payments of $58,247.00 on 21 December 2021, 28 February 2022, 4 November 2022, and 3 May 2022.

### III.    Installment Contract

Plaintiff asserts the 1986 Agreement is an installment contract.  Our Supreme Court has described an "installment contract" as

> one which requires or authorizes the delivery of goods in separate lots to be separately accepted.  In such cases the statute of limitations runs against each installment as it becomes due, thus permitting actions falling within the limitations period while precluding those that fall outside of it.  Though the term "installment contract" technically applies to contracts for the sale of goods, for limitations purposes this principle has been extended to some agreements falling outside the technical definition.

*Christenbury Eye Ctr., P.A. v. v. Medflow, Inc.*, 370 N.C. 1, 7, 802 S.E.2d 888, 892-93 (2017) (internal citation and quotation marks omitted).

Plaintiff argues they entered an installment contract, citing: *Christenbury*; *Martin v. Ray Lackey Enters., Inc.*, 100 N.C. App. 349, 396 S.E.2d 327 (1990); *U.S. Leasing Corp. v. Everett, Creech, Hancock, and Herzig*, 88 N.C. App. 418, 363 S.E.2d 665 (1988); and *Liptrap v. City of High Point*, 128 N.C. App. 353, 496 S.E.2d 297

(1998). The majority's opinion holds "the terms of the 1986 Agreement set out that Plaintiff would install the water and sewer systems in exchange for Defendant's promise to make certain payments and reimbursements. Just as the agreement in *Christenbury* lacked any indication the parties intended their promises to be divisible, severable, or otherwise capable of apportionment, the 1986 Agreement contains no provision."

The majority's opinion focuses on Defendant's "decision" to connect customers to the utility system to trigger the payment provisions. Defendant's allowing a developer to access the system is not a discretionary decision. If a developer meets the qualifications and can pay the fees, they are allowed access. Unlike in *Christenbury*. the payments are self-executing and are due six months after a connection and are not dependent upon any decision by Defendant.

The majority's opinion also opines this case is analogous to *Liptrap* because "there is no express language defining what constitutes a breach of the [1986] Agreement, nor an express provision allowing Plaintiff to seek recovery of the payments as they become due." The 1986 Agreement unambiguously provides Defendant "*shall reimburse* [Plaintiff] for the water and sewer facilities and equipment installed pursuant to this Agreement" semi-annually. (emphasis supplied). **(Doc Ex. p 2)** Unlike in *Liptrap*, the intent of the parties is that a breach occurs when Defendant fails to make the agreed-to semi-annual payment following a connection fee.

Like our Court held in *Martin* and *U.S. Leasing Corp.* an installment and executory contract exists here. In *Martin*, the language of the lease made it clear the "intent of the parties was that breach would occur when the lessee failed to pay the real estate taxes levied against the property as they came due." *Martin*, 100 N.C. App. at 354, 396 S.E.2d at 331. The lease in *Martin* provides the lessee, "in addition to rent, . . . is to pay all real estate taxes levied upon and assessed against the premises." *Id.* Here, the 1986 Agreement provides: "[Defendant] *shall reimburse* [Plaintiff] for the water and sewer facilities and equipment installed pursuant to this Agreement as follows. . ." (emphasis supplied). The language of the 1986 Agreement and the language of the lease in *Martin* are analogous.

In *U.S. Leasing Corp.*, this Court held the statute of limitations did not bar the defaults which occurred within the applicable period. *U.S. Leasing Corp.*, 88 N.C. App. at 421-22, 363 S.E.2d at 667. The majority's opinion holds "A provision in the parties' agreement expressly allowed the plaintiff 'to seek recovery of each payment as it became due.'" However and in context, this complete quote was used to refute an argument any missed payment advanced all subsequent payments:

> We likewise reject the defendant-appellees' argument that the first failure to make payment in February 1982 automatically matured all remaining obligations under the contract and started the statute of limitations running against the entire debt. Defendant-appellees base their argument upon a lease provision giving plaintiff the optional remedy of suing, upon any breach by defendants, for all "amounts due and to become due." However, we find nothing in this provision or elsewhere in the agreement

5

which operates to automatically accelerate all future obligations under the contract. To the contrary, another option available to plaintiff by express terms of the agreement was to seek recovery of each payment as it became due.

The flaw in both sides' positions is that they each interpret contract provisions concerning *remedies* for breach as bearing upon the accrual of plaintiff's cause of action. However, as previously stated, the cause of action accrues when the *breach* occurs, and the contract in question clearly defines breach or default as failure to make the required payments.

*Id.* at 426-27, 363 S.E.2d at 669-70.

## IV. Conclusion

Plaintiff's case is not properly dismissed. Any purported delay or waiver by Plaintiff "shall not be construed as a general waiver or relinquishment on its part of any such provisions, but the same shall, nevertheless, be and remain in full force and effect." Plaintiff's claims arising within the presumptive applicable two-year period, under N.C. Gen. Stat. § 1-53(1) (2025), are not barred by the statute of limitations. The order of the superior court is lawfully reversed. I respectfully dissent.